BLUEBIRD CORPORATION AND ANTHONY A. SUSI, PLAINTIFFS v. LOIS A. AUBIN,
DEFENDANT

No. COA07-282

(Filed 19 February 2008)

**1. Conflict of Laws— relitigation of claim—procedural rights—law of the forum**

North Carolina law applied in an action concerning operation of a commercial property business in North Carolina and New York because North Carolina is the forum state. The North Carolina conflict of laws rule is that procedural rights are determined by the law of the forum, and whether a claim is being relitigated is a procedural issue.

**2. Collateral Estoppel and Res Judicata— counterclaims—no final judgment in prior action**

Plaintiff did not establish collateral estoppel or res judicata concerning counterclaims in an action arising from a commercial property business in North Carolina and New York. There was not a final judgment on the merits for those counterclaims in the prior N.Y. action.

**3. Constitutional Law— Full Faith and Credit Clause—counterclaims not addressed in New York**

The Full Faith and Credit clause of the U.S. Constitution did not arise from a North Carolina court addressing counterclaims for breach of fiduciary duty and constructive fraud after a New York court order approved the sale of New York properties owned by plaintiff corporation. The New York court did not dispose of those counterclaims.

**4. Conflict of Laws— internal affairs doctrine—correct application of N.Y. law**

There was no merit to plaintiff Susi's argument that the internal affairs doctrine rendered North Carolina courts devoid of jurisdiction to render a decision in an action arising from a New York corporation which had a property business in North Carolina and New York. The internal affairs doctrine is a conflict of laws issue; conflict of laws did not arise here because the North Carolina court plainly and correctly used New York law to render its judgment.

BLUEBIRD CORP. v. AUBIN

[188 N.C. App. 671 (2008)]

**5. Corporations— fiduciary duties—not addressed in prior action**

A North Carolina trial court did not err in an action arising from a commercial property business in New York and North Carolina by addressing the conduct of plaintiff Susi in the sale of New York properties and awarding damages. A New York court had approved the sale of the New York properties, but did not address the conduct which defendant claims depreciated the properties.

**6. Evidence— discrepancies—two separate actions—credibility rather than admissibility**

The trial court did not abuse its discretion by admitting defendant's testimony about the value of corporate property in New York which had been sold in a dispute between the corporation's two shareholders. Defendant had given a deposition in an earlier New York action which arrived at a different conclusion about those values and included different properties, but she was contending that plaintiff Susi had deliberately suppressed the value of the properties, accounting for the change in value, and the New York action involved the sale of specific properties while the North Carolina addressed an alleged breach of fiduciary duty to the corporation and constructive fraud.

**7. Corporations— breach of fiduciary duty by officer—no assignment of error to findings**

Based on the unchallenged findings, the trial court did not err by determining in a dispute between the two shareholders of a commercial property company that defendant had not breached her fiduciary duty by refusing to reveal the identity of a prospective buyer or by refusing to attend board meetings. Plaintiff did not assign error to the trial court's conclusion as to the lack of evidence of damage to the corporation, or to the finding that defendant's absence was excusable under the circumstances.

Appeal by plaintiff Anthony A. Susi from judgment entered 7 December 2006 by Judge Larry G. Ford in Superior Court, Davidson County. Heard in the Court of Appeals 18 September 2007.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by Reid L. Phillips and Andrew J. Haile for plaintiff-appellant Anthony A. Susi.*

*Brinkley Walser, PLLC by G. Thompson Miller for defendant-appellee Lois A. Aubin.*

STROUD, Judge.

Plaintiff Susi and defendant Aubin are each fifty percent shareholders in Bluebird Corporation. Bluebird Corporation and Susi sued Aubin for breach of fiduciary duty, constructive fraud, and breach of contract. Aubin counterclaimed for breach of fiduciary duty, constructive fraud, and requested a declaratory judgment to determine whether certain loans were the lawful obligations of Bluebird Corporation. The trial court ordered, *inter alia*, all Susi's claims against Aubin dismissed with prejudice and that Bluebird Corporation should recover $1,175,000.00 from Susi for his breach of fiduciary duty. Susi appeals. For the following reasons, we affirm.

I. Background

The parties involved in this action have had a contentious and litigious relationship over the past decade. Recitation of the entire history of the parties' previous and current lawsuits in both North Carolina and New York is not necessary to the determination of this action, and thus only the relevant facts are summarized below:

[Aubin] and Susi are each fifty percent shareholders of Bluebird [Corporation], a New York corporation formed in 1997 to purchase and sell commercial property. *[Aubin] and Susi had a written agreement whereby Susi would loan money to Bluebird to acquire or improve property, and [Aubin] would assist in day to day business operations, including the marketing of Bluebird properties.* [Aubin] alleged that in January 1998, she discovered the Harborgate development as a potential property for Bluebird to acquire. Both [Aubin] and Susi visited the property, and negotiations for Bluebird's purchase of Harborgate commenced. In July 1998, Bluebird purchased four lots in Harborgate, and retained an option to purchase the remaining lots.

. . . .

A closing for the purchase of Harborgate was set for 15 January 1999. [Aubin] alleged that when she arrived at the clos-

ing, Susi and Bluebird's attorney explained to her that they were going to close the property through a new North Carolina corporation, The Susi Corporation, which had been formed at the last minute. They explained that Bluebird would execute the purchase agreement, which would then be assigned to The Susi Corporation. [Aubin] did not object, although there was no discussion as to what the distribution of shares would be in the new corporation. [Aubin] assumed The Susi Corporation would either be owned by Bluebird, or that she and Susi would be fifty-fifty owners of The Susi Corporation. Susi advanced the entire purchase price for acquisition of Harborgate.

In reality, [Aubin] had no interest in The Susi Corporation, and thus, no interest in Harborgate. [Aubin] alleged she did not discover that Susi was the sole owner of The Susi Corporation until 1 March 1999. According to [Aubin], Susi never mentioned before the day of closing that Harborgate would be purchased by a North Carolina corporation, and Susi never told her she was not a fifty percent share[]holder in The Susi Corporation. Susi refused [Aubin's] demand to immediately give her a fifty percent ownership interest in The Susi Corporation.

*Aubin v. Susi*, 149 N.C. App. 320, 321-22, 560 S.E.2d 875, 877, *disc. rev. denied*, 356 N.C. 610, 574 S.E.2d 474 (2002) (emphasis added).

On 19 March 1999, Aubin brought an action in North Carolina against Susi, New Harborgate Corporation, and Bluebird Corporation ("Bluebird"). *Id.* at 322, 560 S.E.2d at 877. Aubin's amended complaint "alleged claims of conversion, constructive fraud, usurpation of corporate opportunity, fraud, unfair and deceptive practices, and breach of contract.[1] [Aubin's] amended complaint averred that she was filing the suit both in an individual capacity and derivatively in her capacity as a shareholder of Bluebird." *Id.* at 322-23, 560 S.E.2d at 878.

---

1. At various times throughout the history of this lawsuit and the parties' other lawsuits, both Susi and Aubin have alleged that the other has breached their "agreement" or "contract." The law of the case, based upon this Court's last opinion arising from this dispute, is that "[Aubin] and Susi had a written agreement whereby Susi would loan money to Bluebird to acquire or improve property, and [Aubin] would assist in day to day business operations, including the marketing of Bluebird properties." *See Aubin* at 321, 560 S.E.2d at 877. Both Susi and Aubin allege that they did enter a "Shareholder's Agreement" with these terms, though there are also allegations of oral modifications. However, when we use the term "contract" or "agreement," we are referring to the "Shareholder's Agreement" as recognized by this Court in our prior opinion. *See Aubin v. Susi*, 149 N.C. App. 320, 560 S.E.2d 875 (2002).

In May 2000, before trial had begun, Susi transferred the Harborgate property to Bluebird. *Id.* at 323, 560 S.E.2d at 878. As a result of the transfer Aubin abandoned most of her derivative claims. *Id.* The trial court, *inter alia*, granted a directed verdict in favor of defendants. *Id.* Aubin appealed. *Id.* Among other things this Court determined that "[Aubin] . . . ha[d] failed to show that any damage which she ha[d] sustained as a result of Susi's actions [were] different from that sustained by Bluebird, and therefore, [Aubin] [did] not have standing to maintain a direct action against defendants for individual recovery." *Id.* at 324, 560 S.E.2d at 878.

Concurrent with the North Carolina litigation described above, on or about 7 October 1999, in New York, Susi initiated an action against Aubin, Red Aves Corporation ("Red Aves"), and Bluebird. On or about 10 November 1999, Aubin, Red Aves, and Bluebird counter-claimed for breach of agreement because Susi had failed "to sign checks for payment of invoices associated with the repair, mainte-nance and administrative costs of the properties[;]" and these actions put the New York properties[2] into jeopardy. The New York litigation resulted in several intermediary procedural decisions. Both parties stipulated to the appointment of a receiver. At the conclusion of the New York litigation on the trial level, the New York court had addressed Susi's claims and approved the sale of certain New York properties owned by Bluebird. However, no judgment, order, stipula-tion, or other document prior to this case and presently in the record before us explicitly addressed and disposed of Aubin's New York counterclaim against Susi for breach of agreement.

On 30 August 2004, at the time of the filing of this action, the Harborgate property was subject to a consent judgment, modified consent judgment, and order (collectively hereinafter referred to as "Homeowners' Judgment") from North Carolina. Bluebird and Susi have also been sued in North Carolina for damages for failing to meet the requirements of the Harborgate Homeowners' Judgment.

In the present case, Susi alleged in his 26 January 2006 verified amended complaint the following: "Bluebird has not been able to timely fulfill all of the obligations set out in the Homeowners' Judgment because it has not had sufficient funds to do so. Bluebird has been unable to meet its current financial obligations to creditors."

---

2. Bluebird owned several commercial properties in New York, including a ware-house, residential lots, a restaurant, and an office building. We will refer to these prop-erties collectively as the "New York properties".

On 23 August 2004, an attorney in a separate action announced in open court that Aubin had received an offer to purchase Harborgate.

On or about 24 August 2004, Aubin's counsel contacted Susi and Bluebird's counsel to report that Aubin had secured an offer to purchase Harborgate for $5 million, plus $800,000.00 to meet the requirements of the Homeowners' Judgment. Aubin's counsel also stated that Aubin would not reveal the identity of the party making the offer or "pursue delivery of a proposed contract of sale" unless Susi first agreed to pay her $1 million from the sale. Susi declined Aubin's proposal and offered that upon payment of Bluebird's debts the remaining amount would be split between them evenly. Susi and Aubin failed to reach any agreement.

Bluebird and Susi claimed that Aubin had breached her fiduciary duty, committed constructive fraud, and breached her contract. Bluebird and Susi also brought an alternative derivative claim. Bluebird and Susi requested that the trial court, *inter alia*, issue a temporary restraining order and a preliminary injunction against Aubin to prevent her from breaching her fiduciary duties and remove her as a director of Bluebird.

In her answer and counterclaim Aubin claimed that when she found out that Susi was the sole shareholder of the Susi Corporation, she requested that he transfer fifty percent of the stock to her. When Aubin said that she would obtain legal counsel to pursue her rights in the Harborgate property, Susi "threatened that if she did, everything would come to a screeching halt, he would foreclose on all his demand notes on the New York properties, and he would dry her up." Aubin claims Susi "set out on a course of conduct with the specific intent to depreciate the value of the New York properties. He caused the New York properties to be placed into receivership and sold. He then purchased those properties at a price substantially less than they were worth."[3] Aubin and Susi had an oral agreement whereby she would receive a $5,000.00 draw against her share of future profits. Susi cut off Aubin's draw which forced her to seek other employment. When Susi did finally transfer the Harborgate property to Bluebird, he had wrongfully placed a $926,000.00 deed of trust in his own favor on the Harborgate property. On these alleged facts, Aubin

---

3. On 20 March 2002, after the New York court approved a purchase price for the New York properties of $450,000.00, the receiver's deed was recorded which named the grantees as Earl Fitzhugh and Marianne S. McGonagle, who were trustees of the Watertown Properties Trust. Susi is the sole beneficiary of the Watertown Properties Trust.

counterclaimed against Susi in the present case as a derivative action for, *inter alia*, breach of fiduciary duty, constructive fraud, dissolution and appointment of receiver.

The North Carolina trial court ordered, *inter alia*, that all claims against Aubin be dismissed with prejudice and that Bluebird recover $1,175,000.00 from Susi for his breach of fiduciary duty and constructive fraud. Susi appeals. Susi presents four questions before this Court: (1) Whether the North Carolina trial court erred in "overturning" the decision of a New York court which approved the sale of New York properties owned by Bluebird Corporation when the issues raised by Aubin at trial in North Carolina in reference to that sale were barred from reconsideration in North Carolina by collateral estoppel, *res judicata*, the Full Faith and Credit Clause, and the internal affairs doctrine; (2) whether the North Carolina trial court erred in finding Susi liable to Bluebird when the sale of New York properties was determined to be fair to Bluebird and was approved by a New York court; (3) whether the North Carolina trial court erred in awarding damages based on the sale of the New York properties when Aubin presented no admissible evidence as to a different value for the New York properties; and (4) whether the North Carolina trial court erred in finding that Aubin did not breach her fiduciary duty to Bluebird Corporation.

## II. Reconsideration of Approved Sale

**[1]** Susi assigns error to the trial court "overturning" the New York court's decision which approved the sale of New York properties owned by Bluebird because reconsideration of the sale was barred by collateral estoppel, *res judicata*, the Full Faith and Credit Clause, and the internal affairs doctrine. We disagree.

We must first address which state's law should be applied to determine whether the North Carolina trial court improperly reconsidered the New York court's decision. "A trial court's application of North Carolina's conflict of law rules is a legal conclusion which this Court reviews under a *de novo* standard." *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 14, 598 S.E.2d 570, 579 (2004).

North Carolina's "traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by . . . the law of the situs of the claim, and remedial or procedural rights are determined by . . . the law of the forum." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). A substantial right is "a

legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right." *Oestreicher v. Stores*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (internal quotations omitted). Whether a claim or issue is being relitigated is a procedural issue and is not "a legal right affecting or involving a matter of substance[,]" *see id*, and thus North Carolina law applies to procedural issues as it is the forum state. *See Boudreau* at 335, 368 S.E.2d at 853-54; *Oestreicher* at 130, 225 S.E.2d at 805.

A. Collateral Estoppel

[2] Whether a North Carolina court is barred from hearing a specific claim or issue is a question of law unrelated to any specific facts of a case. Questions of law are reviewed *de novo. Hospice at Greensboro, Inc. v. N.C. Dep't of Health & Human Servs.*, 185 N.C. App. 1, 9-10, 647 S.E.2d 651, 657, *disc. rev. denied*, 361 N.C. 692, —— S.E.2d —— (2007).

> The elements of collateral estoppel, as stated by our Supreme Court, are as follows: (1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined.

*McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211, *disc. rev. denied*, 356 N.C. 437, 571 S.E.2d 222 (2002) (citing *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 349 S.E.2d 552 (1986)). The burden of establishing that a claim is barred by collateral estoppel is on the party relying upon the doctrine. *See Morris v. Moore*, 186 N.C. App. 431, 435-36, 651 S.E.2d 594, 598 (2007).

In the present case Susi failed to establish the requisite elements required for a valid defense of collateral estoppel. Susi contends that the New York decision which approved the sale of New York properties owned by Bluebird effectively disposed of Aubin's counterclaims in that lawsuit, which he argues are identical to her counterclaims in the present case. Although the record before us does not contain all of the documents from the New York litigation, it does contain many of them, presumably those counsel deemed necessary for the Court's understanding of this issue. However, upon careful review of the orders entered in the New York litigation, we find no indication of "a final judgment on the merits" of the issues in Aubin's New York

counterclaims, which would demonstrate that Aubin's issues were "actually litigated and necessary to the judgment" or that "the issue was actually determined." *See McDonald* at 230, 567 S.E.2d at 211. In fact, the only place Aubin's New York counterclaims are ever mentioned within the record before us is in her answer to the New York complaint.

It is possible that Aubin failed to prosecute her counterclaim in New York or that the New York court simply failed to mention that by approving the sale of the New York properties it was implicitly denying Aubin's claims as to improper conduct on the part of Susi. However, this sort of speculation as to what may have or could have happened in the New York litigation is not sufficient for us to conclude that the elements of collateral estoppel have been established. Based upon the record before us, Susi has failed to demonstrate that Aubin's claims are collaterally estopped by the New York orders.

B. *Res Judicata*

Res judicata is also a procedural question of law to be reviewed *de novo* pursuant to North Carolina law. *See Stetser* at 14, 598 S.E.2d at 579; *Boudreau at* 335, 368 S.E.2d at 853-54; *see also Oestreicher* at 130, 225 S.E.2d at 805. "The essential elements of *res judicata* are: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present suit; and (3) an identity of parties or their privies in both suits." *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 138, 502 S.E.2d 58, 61, *disc. rev. denied*, 349 N.C. 228, 515 S.E.2d 700 (1998). As with collateral estoppel, the burden of establishing *res judicata* is on the party relying upon the doctrine. *See Beall v. Beall*, 156 N.C. App. 542, 545, 577 S.E.2d 356, 359 (2003). However, just as we determined in our collateral estoppel analysis, the record contains no final judgment on the merits as to Aubin's counterclaim in New York. Therefore, we conclude Susi has failed to establish the elements of *res judicata*.

C. Full Faith and Credit Clause

[3] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. "[T]he judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Nat. Assur. v. N.C. Life & ACC, Etc.*, 455 U.S. 691, 704, 71 L. Ed. 2d 558, 570 (1982) (citation and internal quotations omitted).

The record in this case includes an order issued by New York Supreme Court Justice Hugh A. Gilbert on 15 February 2002. Judge Gilbert

> [o]rdered that the Plaintiff's Motion for approval of the purchase offer of all assets of Bluebird Corporation and Red Aves Corporation located in New York State [be] granted; and . . . further

> [o]rdered that the Receivership established by Order of the Honorable Hugh A. Gilbert dated January 14, 2000 and modified by Stipulation and Order entered with the Jefferson County Clerk on April 19, 2000 be further modified to authorize the Receiver, Joseph Rizzo to execute such documents as are required, including a Receiver's Deed, to effect the sale of the property described at Schedule "A" to the Order filed with the Jefferson County Clerk's Office on February 1, 2000 as described in the Motion.

Though we agree with Susi's contention that this New York order approves the sale of New York properties, we do not agree that the North Carolina trial court has "overturned" this order by addressing Aubin's counterclaims of breach of fiduciary duty and constructive fraud and awarding Bluebird damages pursuant to those findings. The New York court approved the sale of New York properties, but did not dispose of or address Aubin's counterclaims. As we have no indication in the record that the North Carolina trial court addressed a claim which was previously addressed by the New York court, Susi's argument as to violation of the Full Faith and Credit Clause is without merit.

D. Internal Affairs Doctrine

[4] The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp.* 457 U.S. 624, 645, 73 L. Ed. 2d 269, 285 (1982). "States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care." *Atherton v. F.D.I.C.*, 519 U.S. 213, 224, 136 L. Ed. 2d 656, 668 (1997).

A rule of law similar to the internal affairs doctrine can be found at North Carolina General Statute § 55-7-47 which provides that

> [i]n any derivative proceeding in the right of a foreign corporation, the matters covered by this Part shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation except for the matters governed by G.S. 55-7-43, 55-7-45, and 55-7-46.

N.C. Gen. Stat. § 55-7-47 (2003). Accordingly, the trial court applied New York law in its judgment.

Susi argues the "internal affairs doctrine" as a jurisdictional issue which would leave North Carolina courts devoid of authority to render a decision in this case. Since Susi and Bluebird are the parties who brought this lawsuit in North Carolina, it seems odd that Susi would then argue that North Carolina does not have jurisdiction to decide the case. Yet we also recognize that parties cannot confer jurisdiction upon the court, even by agreement. *See Degree v. Degree*, 72 N.C. App. 668, 670, 325 S.E.2d 36, 37, *disc. rev. denied*, 313 N.C. 598, 330 S.E.2d 607 (1985). However, the internal affairs doctrine as defined by the United States Supreme Court is a "conflict of laws principle[.]" *Edgar* at 645, 73 L. Ed. 2d at 285. It is not a jurisdictional principle. Here the trial court plainly and correctly used New York law to render its judgment. The trial court did not use North Carolina law to determine this case involving a New York corporation. In this case we have no conflict of laws issue, so Susi's argument as to the internal affairs doctrine is without merit.

Susi's argument that the North Carolina trial court erred by "overturning" a New York court decision is therefore without merit, as the North Carolina trial court did not "overturn" the New York Court's decision. Accordingly, these assignments of error are overruled.

### III. Fairness of New York Properties Sale

[5] Susi next argues that the North Carolina trial court erred in determining that the sale of the New York properties was unfair when the New York court had already determined the sale to be fair and the evidence established the fairness of the sale. Susi specifically directs this Court's attention to the language of the North Carolina judgment where the trial court found that

> Susi's conduct in this case, i.e., the timing and manner of his debt enforcement at a time with [sic] the New York properties

were cash flow positive and there was, by his own statement, a lot of equity in the properties for no other reason than to deprive Aubin of any possibility of realizing any profit for her work in finding and managing the properties, and in taking actions to depreciate the properties and acting in collusion to buy the properties at a private sale go far beyond common decency and honesty.

We note that the North Carolina judgment does not in any way question the *fairness* of the New York sale, but instead the trial court addresses Susi's conduct, which depreciated the properties, contributing to the low sales price as approved by the New York court. The North Carolina trial court's judgment does not analyze the fairness of the sale of the New York properties, but only Susi's conduct in relation to it. Based upon the record before us, as noted above, the New York court only approved the sale of the New York properties and did not address Susi's conduct which Aubin claims depreciated the properties, thus making it necessary to sell the properties for less. The New York court approved the sale and the North Carolina trial court addressed Susi's fiduciary duties to the corporation; the North Carolina court did not address the "fairness" of the sale. Susi's argument is meritless.

### IV. Award of Damages

Next Susi argues that the trial court erred by awarding damages to Bluebird because (1) the New York court had already determined the price for the sale of the New York properties to be fair and therefore Bluebird was not damaged by the sale, and (2) Aubin did not introduce any competent evidence establishing a sales price for the New York properties other than what the New York court found to be "fair".

### A. Bluebird Not Damaged by Sale

As we have previously stated, the trial court did not award Bluebird damages because it determined the sales price of the New York properties to be "unfair", but instead awarded damages to Bluebird because Susi breached his fiduciary duties and committed constructive fraud upon the corporation in his dealings with the New York properties. In other words, the sale of the New York properties did not damage Bluebird; Susi's breach of fiduciary duties and constructive fraud damaged Bluebird.

B. Admission of Aubin's Testimony

[6] Susi's argument as to the inadmissability of Aubin's testimony is based upon his contention that during the course of the New York litigation Aubin gave a different number in her affidavit as to the value of the New York properties than she did in her trial testimony in North Carolina. On 15 August 2000, Aubin submitted an affidavit during the New York litigation stating that the total fair market value of the New York properties was $1,215,000.00 at the time of the affidavit. During the North Carolina trial in September of 2006 Aubin was asked to give an opinion on the "reasonable fair market value of . . . [the] property immediately prior to the disputes with Mr. Susi and his withdrawing payments for the on-going maintenance[.]" Aubin testified to the value of each parcel of the New York properties individually, and the trial court found that the total value of the New York properties was $1,625,000.00, or $410,000.00 more than Aubin had stated in her New York affidavit approximately six years earlier. Susi argues that this discrepancy in numbers evidences Aubin's self-serving bias and unreliability in testifying, rendering her testimony as to the value of the properties inadmissible. Susi also argues that because of Aubin's testimony the trial court improperly included certain New York properties in the total property value, though not all of the New York properties owned by Bluebird were included in the sale approved by the New York court. We do not agree with Susi's contentions.

"The balance struck by the trial court regarding the admissibility of evidence will not be disturbed on appeal absent a clear showing the court abused its discretion by admitting, or excluding, the contested evidence. A trial court abuses its discretion when its decision lacks any basis in reason." *City of Charlotte v. Ertel*, 170 N.C. App. 346, 348, 612 S.E.2d 438, 441 (2005) (internal citation and internal quotations omitted).

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701. "Any witness, not necessarily an expert, may give h[er] opinion of the value of specific real property if [s]he has knowledge gained from experience, information, and observation." *Harris v. Harris*, 51 N.C. App. 103, 105, 275 S.E.2d 273, 275, *disc. rev. denied*, 303 N.C. 180, 280 S.E.2d 452 (1981).

At trial, Aubin was asked to give an opinion as to the values of the New York real properties owned by Bluebird. Aubin and Susi had been managing these properties for approximately a decade by the time of trial in North Carolina. In addition, Aubin was licensed in real estate sales in the state of New York in 1985 and received her broker's license in 1988. Aubin testified that she had been selling real estate since 1985. Aubin did not testify as an expert witness, but rather as a lay witness as to her opinion of the value of the properties. The trial court did not abuse its discretion in admitting the testimony of Aubin as to her opinion of the value of the New York properties, considering her extensive real estate background and specific knowledge of the properties owned by a corporation in which she is a fifty percent shareholder. *See id.* The trial court did not abuse its discretion in determining Aubin's testimony was "rationally based on the perception of the witness and . . . helpful to a clear understanding of h[er] testimony or the determination of a fact in issue." *See* N.C. Gen. Stat. § 8C-1, Rule 701.

As to the discrepancy in the amount of the total values of the New York properties as stated in the 2000 affidavit and in Aubin's trial testimony, the New York affidavit is clearly worded that the totals were determined "at this time" which was 15 August 2000. At the trial in North Carolina Aubin was asked to render an opinion as to the value of the properties before her dispute with Susi. The dispute about Harborgate arose in March of 1999 when Aubin discovered she had no interest in Harborgate, and thus Aubin's trial testimony related to the value of the properties prior to March of 1999. Assuming Aubin's contentions are true, and Susi was depreciating the value of the New York properties by refusing to properly maintain them, it would make sense that her opinion as to the value of the properties would change from March of 1999 to August of 2000, and indeed that the value of the properties would continue to decline as time went on, to the amount for which it was ultimately sold by the receiver. Furthermore, discrepancies in testimony are not an issue of admissibility, but rather of credibility. *See Smith v. Smith*, 89 N.C. App. 232, 235, 365 S.E.2d 688, 691 (1988) ("Credibility, contradictions, and discrepancies in the evidence are matters to be resolved by the trier of fact, here the trial judge, and the trier of fact may accept or reject the testimony of any witness."). We therefore do not find the trial court's admission of Aubin's testimony as to the value of the properties to be an abuse of discretion.

As to the specific New York properties which Susi claims the trial court improperly included in its award for damages because they were not part of the properties approved for the sale in New York, we once again note that the North Carolina trial court was not reassessing the sale as approved by the New York court, but instead addressing whether Susi had breached his fiduciary duty or committed constructive fraud upon Bluebird. Whether the properties were sold or not does not change the fact that the properties may have been damaged due to Susi's breach of his fiduciary duties.

This argument is overruled.

### V. Aubin's Fiduciary Duty

**[7]** Lastly, Susi argues the trial court erred in determining Aubin did not breach her fiduciary duty when she refused to reveal the identity of a prospective buyer to Bluebird and by failing to attend board meetings. We disagree.

### A. Refusing to Reveal Prospective Purchaser's Identity

The trial court determined that Aubin did not breach her fiduciary duty by failing to disclose the identity of a prospective buyer for Harborgate, but that "[i]n any event, the matter became moot when Aubin put the prospective purchaser in touch with Susi and there is no evidence of any damage to Bluebird." Susi failed to assign error to the trial court's conclusion as to the lack of evidence of damage to Bluebird.

"The appellant must assign error to each conclusion it believes is not supported by the evidence. N.C.R. App. P. 10. Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Fran's Pecans, Inc. v. Greene,* 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999). In *Parametric Capital Mgmt., LLC v. Lacher,* the court determined that a claim for breach of fiduciary duty only "ripens" when damages are alleged. 15 A.D.3d 301, 302 (N.Y. App. Div. 2005) (determining plaintiffs who brought a cause of action for breach of fiduciary duty against their defendant attorney who had withdrawn from representation needed to plead damages for a valid claim). Based upon the unchallenged finding of the trial court that there was "no evidence of any damage to Bluebird", there is no valid claim for breach of fiduciary duty by Aubin. *See Parametric Capital Mgmt., LLC,* 15 A.D.3d at 302; *Fran's Pecans, Inc.* at 112, 516 S.E.2d at 649.

## B. Attending Meetings

Susi also argues that Aubin breached her fiduciary duty because she failed to attend several of Bluebird's board meetings. The trial court made a conclusion of law that "Aubin's absence from meetings is excusable under all the circumstances." Susi again failed to assign error to this conclusion. His failure to assign error means this Court takes this conclusion as conclusive on appeal. *Fran's Pecans, Inc.* at 112, 516 S.E.2d at 649.

This argument is overruled.

## VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

AFFIRMED.

Chief Judge MARTIN and Judge ARROWOOD concur.