ZACHARY, Judge.
 

 *267
 
 Robert Levon Jones (defendant) appeals from judgments entered upon his convictions
 
 *282
 
 of misdemeanor assault inflicting serious injury and robbery with a dangerous weapon. On appeal, defendant argues that his convictions were obtained "based upon evidence that was unfairly prejudicial and [was] admitted in violation of the principle[s] of double jeopardy [and] collateral estoppel." We have carefully considered defendant's argument in light of the record on appeal and the applicable law, and conclude that defendant is not entitled to relief on the basis of this argument.
 

 Factual and Procedural Background
 

 On 9 December 2013, defendant was indicted for the offenses of armed robbery and felony assault with a deadly weapon inflicting serious injury. The charges against defendant were tried before the trial court and a jury beginning on 19 September 2016. Defendant did not testify or present evidence at trial. The State's evidence is summarized, in relevant part, as follows.
 

 James Kelly testified that he was 69 years old and owned the Small Luxuries jewelry store in High Point, North Carolina. A Biscuitville restaurant was located approximately 150 to 200 yards from his store. On 27 March 2013, Mr. Kelly noticed a gold car without a license plate in the parking lot, with two African-American men in the car. At approximately 10:00 a.m., "three black men" entered the store wearing hooded sweatshirts. The men, all of whom were armed with handguns, hit Mr. Kelly on the head with metal objects that he assumed were their
 
 *268
 
 weapons. The men fled from the store after stealing jewelry that Mr. Kelly estimated to have a value of $30,000. Some of the stolen jewelry was later returned by the police. Mr. Kelly was treated for injuries sustained in the robbery, including stitches over one eye and a fractured skull. When law enforcement officers showed Mr. Kelly a photographic lineup, he was unable to identify any of the men who had robbed his store.
 

 Emily Kelley testified that on 27 March 2013 she worked at the Biscuitville restaurant near Mr. Kelly's store. Law enforcement officers questioned her shortly after the jewelry store was robbed, and she told them that three African-American men had eaten at Biscuitville that morning, and that one of the men had paid with a debit card. At trial Ms. Kelley testified that she did not recognize defendant. John Griffiths, the regional vice-president for Wood Forest National Bank, identified bank documents showing a transaction in defendant's checking account for a purchase at Biscuitville on 27 or 28 March 2013.
 

 Kristy Riojas testified that on 27 March 2013 she worked at a pawn shop named Got Gold, that purchased gold, silver, and jewelry. Ms. Riojas described the general business practices of Got Gold as follows:
 

 [MS. RIOJAS]: So, a customer would come in and show us what they wanted to sell. We would test it, make sure if it was real silver, gold. We would then weigh it, give them a price. If they accepted the price, we would ask for their ID, make a photocopy of it, write down the description of the gold that was sold, ask for their signature. And then we would just put the-the jewelry in a Ziploc bag and staple it onto the paper and file it. And then we would then put it in the computer, send it off to the police department.
 

 Ms. Riojas identified a receipt, which was introduced over defendant's objection, for a transaction that took place on 27 March 2013, in which a customer sold coins and jewelry. This exhibit included a list of the pawned items and a copy of a driver's license issued to defendant.
 

 High Point Police Detective Eric Berrier identified a stolen property receipt that the Police Department provided to Got Gold upon seizure of stolen property. Winston-Salem Police Detective Richard Workman testified that in 2013 he investigated crimes involving pawn shops and dealers in precious metals. On 28 March 2013, Detective Workman reviewed a sales receipt from Got Gold and noted certain items of jewelry that had been sold, including a coin stolen from Small Luxuries. High Point Police Detective Christopher Walainin testified that he took a statement from Mr. Kelly that generally corroborated Mr. Kelly's trial
 
 *269
 
 testimony. An officer with the K-9 unit used a dog to trace a trail of jewelry on the ground between the jewelry store and Biscuitville.
 
 *283
 
 On 23 September 2016, the jury returned verdicts finding defendant guilty of robbery with a dangerous weapon and of misdemeanor assault inflicting serious injury. The trial court sentenced defendant to a term of 75 days' imprisonment for assault inflicting serious injury, and a consecutive sentence of 73 to 100 months' imprisonment for robbery with a dangerous weapon. Defendant gave notice of appeal in open court.
 

 Collateral Estoppel
 

 As discussed above, Ms. Riojas testified without objection concerning the general business practices of Got Gold, including the pawn shop's practice of requiring a seller to sign a form listing the items for sale and providing a copy of an ID, such as a driver's license. On appeal, defendant argues that the trial court committed reversible error by admitting into evidence, over his objection, a receipt showing that defendant pawned jewelry at Got Gold soon after Small Luxuries was robbed. The receipt contained an itemized list of the items defendant pawned, a copy of defendant's driver's license, and defendant's signature. We conclude that this argument lacks merit.
 

 " 'When a defendant objects to the admission of evidence, we consider, whether the evidence was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence.' "
 
 State v. Thompson
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 177
 
 , 180-81 (2016) (quoting
 
 State v. Blackwell
 
 ,
 
 207 N.C. App. 255
 
 , 257,
 
 699 S.E.2d 474
 
 , 475 (2010) ),
 
 disc. rev. denied
 
 ,
 
 369 N.C. 485
 
 ,
 
 795 S.E.2d 366
 
 (2017). In this case, defendant argues that the pawnshop ticket was not admissible, on the grounds that prior to the trial of this matter, defendant was acquitted by a Forsyth County jury on a charge of obtaining property by false pretenses, based on defendant's pawning the jewelry at Got Gold. Defendant contends that upon his acquittal of the charge of obtaining property by false pretenses, the State was collaterally estopped from introducing the pawn shop receipt at his Guilford County trial for armed robbery and felony assault, in order to show that defendant was in possession of items stolen from the jewelry store shortly after the robbery. "Whether the doctrine of collateral estoppel is applicable and bars a specific claim or issue is a question of law subject to
 
 de novo
 
 review."
 
 Powers v. Tatum
 
 ,
 
 196 N.C. App. 639
 
 , 642,
 
 676 S.E.2d 89
 
 , 92 (2009) (citing
 
 Bluebird Corp. v. Aubin
 
 ,
 
 188 N.C. App. 671
 
 , 678,
 
 657 S.E.2d 55
 
 , 61 (2008) ).
 

 The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final
 
 *270
 
 judgment, that issue cannot again be litigated between the same parties in any future lawsuit."
 
 Ashe v. Swenson
 
 ,
 
 397 U.S. 436
 
 , 443,
 
 90 S.Ct. 1189
 
 , 1194,
 
 25 L.Ed.2d 469
 
 , 475 (1970). "In
 
 Benton v. Maryland
 
 ,
 
 395 U.S. 784
 
 ,
 
 89 S.Ct. 2056
 
 [
 
 23 L.Ed.2d 707
 
 (1969) ] the Court held that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment."
 
 Ashe
 
 ,
 
 397 U.S. at 437
 
 ,
 
 90 S.Ct. at 1191
 
 ,
 
 25 L.Ed.2d at 471
 
 . In
 
 Ashe
 
 , "[t]he doctrine of collateral estoppel was held to be a part of the constitutional guarantee against double jeopardy[.]"
 
 State v. Edwards
 
 ,
 
 310 N.C. 142
 
 , 145,
 
 310 S.E.2d 610
 
 , 613 (1984) (citing
 
 Ashe
 
 ).
 

 The legal implications of a criminal defendant's acquittal of a charge have been considered in a variety of procedural contexts. In
 
 Ashe
 
 :
 

 The [Supreme] Court was asked to determine whether the State may prosecute a defendant a second time for armed robbery where the jury at defendant's first trial found the State did not meet its burden of proof on the issue of identifying defendant as one of the perpetrators. In
 
 Ashe
 
 , the Court held that prior acquittal of an essential issue precludes the State, on double jeopardy grounds, from trying defendant on that issue again[.] ... "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."
 

 State v. Adams
 
 ,
 
 347 N.C. 48
 
 , 60-61,
 
 490 S.E.2d 220
 
 , 226 (1997) (quoting
 
 Ashe
 
 ,
 
 397 U.S. at 443
 
 ,
 
 90 S.Ct. at 1194
 
 ,
 
 25 L.Ed.2d at
 
 475 ).
 
 Ashe
 
 thus addressed the issue of whether a defendant who was acquitted of an offense
 
 *284
 
 could be prosecuted for a related crime.
 
 See also, e.g.,
 

 Edwards
 
 ,
 
 310 N.C. at 145
 
 ,
 
 310 S.E.2d at 612-13
 
 (addressing defendant's argument that "his acquittal on the larceny charge in the first trial determined matters of fact in his favor so as to collaterally estop the State from now proving him guilty of breaking or entering with the intent to commit larceny.").
 

 In the present case, defendant does not dispute that he could be prosecuted for the robbery of the jewelry store, notwithstanding his acquittal of obtaining property by false pretenses, a charge based on defendant's pawning items taken in the robbery. Instead, the present case raises the issue of the admissibility of evidence in a criminal trial where the same evidence was also pertinent to an earlier trial in which the defendant was acquitted. This issue has also been analyzed in several contexts. In
 
 State v. Scott
 
 ,
 
 331 N.C. 39
 
 ,
 
 413 S.E.2d 787
 
 (1992), our Supreme Court held that:
 

 *271
 
 [The issue is] whether the State may introduce in a subsequent criminal trial evidence of a prior alleged offense for which defendant had been tried and acquitted in an earlier trial. We hold that where the probative value of such evidence depends upon defendant's having in fact committed the prior alleged offense, his acquittal of the offense in an earlier trial so divests the evidence of probative value that, as a matter of law, it cannot outweigh the tendency of such evidence unfairly to prejudice the defendant. Such evidence is thus barred by N.C. R. Evid. 403.
 

 Scott
 
 ,
 
 331 N.C. at 41
 
 ,
 
 413 S.E.2d at 788
 
 .
 
 Scott
 
 was thus based upon analysis of N.C. R. Evid., Rule 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Other cases have addressed the admissibility of evidence related to an offense of which the defendant was acquitted as evidence of the defendant's prior bad acts, pursuant to N.C. R. Evid. Rule 404(b) (2015).
 
 See
 

 State v. Agee
 
 ,
 
 326 N.C. 542
 
 ,
 
 391 S.E.2d 171
 
 (1990).
 

 In this case, the pawn shop receipt was not introduced as evidence of a prior bad act, but as circumstantial evidence of defendant's guilt; in addition, defendant does not challenge its general admissibility or argue that the pawn shop ticket should have been excluded under N.C. R. Evid. Rule 403. Defendant instead argues that its admission was barred by the doctrine of collateral estoppel. In
 
 State v. Bell
 
 ,
 
 164 N.C. App. 83
 
 ,
 
 594 S.E.2d 824
 
 (2004), we held that:
 

 [T]his issue is governed by
 
 Dowling v. United States
 
 ,
 
 493 U.S. 342
 
 ,
 
 110 S.Ct. 668
 
 ,
 
 107 L.Ed.2d 708
 
 (1990). In
 
 Dowling
 
 , the United States Supreme Court noted: ... "The issue is the inadmissibility of [evidence relating to an alleged crime that the defendant had previously been acquitted of committing]."
 
 Id
 
 . at 347,
 
 110 S.Ct. at 671
 
 ,
 
 107 L.Ed.2d at 717
 
 [.] ... [T]he Court held that evidence is inadmissible under the Double Jeopardy Clause only when it falls within the scope of the collateral estoppel doctrine. That doctrine provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."
 
 Id
 
 . at 347,
 
 110 S.Ct. at 672
 
 ,
 
 107 L.Ed.2d at 717
 
 [.] ... "The determinative factor is not the introduction of the same evidence [as offered in the first trial,] but rather whether it is absolutely necessary to defendant's conviction [in the second trial] that the
 
 *272
 
 second jury find against defendant on an issue upon which the first jury found in his favor."
 

 Bell
 
 ,
 
 164 N.C. App. at 89-90
 
 ,
 
 594 S.E.2d at 828
 
 (quoting
 
 Edwards
 
 at 145,
 
 310 S.E.2d at
 
 613 ) (alterations in original). We will next consider whether the trial court erred by allowing the State to introduce the pawn shop receipt, applying the principles discussed above.
 

 Analysis
 

 Preliminarily, we note that the State argues on appeal that defendant failed to preserve for appellate review the issue of whether his acquittal of obtaining property by false pretenses barred admission of the pawn shop ticket, on the grounds that defendant failed to produce documentation of his earlier acquittal. We note that at trial defendant repeatedly stated that he had been acquitted of
 
 *285
 
 obtaining property by false pretenses, and that the prosecutor did not dispute defendant's assertion. We also observe that this Court could take judicial notice of the proceedings of defendant's trial for obtaining property by false pretenses. We conclude that it is unnecessary to do so because, assuming
 
 arguendo
 
 that defendant has accurately characterized the result of the prior trial as an acquittal, the trial court did not err by allowing the State to introduce the pawn shop ticket in the instant case.
 

 The pawnshop receipt was introduced as evidence of defendant's guilt of robbery with a dangerous weapon pursuant to the doctrine of recent possession:
 

 The doctrine of recent possession allows the jury to infer that the possessor of recently stolen property is guilty of taking it. The doctrine of recent possession applies where the State proves (1) that the property was stolen; (2) that the defendant had possession of the stolen property, which means that he was aware of its presence and, either by himself or collectively with others, had both the power and intent to control its disposition or use; and (3) that defendant's possession of the stolen property occurred so soon after it was stolen and under such circumstances that it is unlikely he obtained possession honestly.
 

 State v. Mohamed
 
 ,
 
 205 N.C. App. 470
 
 , 489,
 
 696 S.E.2d 724
 
 , 738 (2010) (citation omitted). Defendant does not dispute that the State produced evidence that defendant pawned stolen jewelry shortly after the robbery. Defendant contends, however, that his acquittal of the offense of obtaining property by false pretenses established that he had been "acquitted of being the perpetrator in the pawning." We disagree.
 

 *273
 
 Our Supreme Court "has previously set out the elements of obtaining property by false pretenses: '(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.' "
 
 State v. Parker
 
 ,
 
 354 N.C. 268
 
 , 283-84,
 
 553 S.E.2d 885
 
 , 897 (2001) (quoting
 
 State v. Cronin
 
 ,
 
 299 N.C. 229
 
 , 242,
 
 262 S.E.2d 277
 
 , 286 (1980) ). "An essential element of the offense is that the defendant acted knowingly with the intent to cheat or defraud. Moreover, the false pretense need not come through spoken words, but instead may be by act or conduct."
 
 Parker
 
 ,
 
 354 N.C. at 284
 
 ,
 
 553 S.E.2d at 897
 
 (citations omitted). Evidence that a defendant knowingly pawned stolen goods is sufficient to support a conviction for obtaining property by false pretenses, with the false representation being the defendant's representation that he owned, or was entitled to dispose of, the property being pawned.
 
 State v. Parker
 
 ,
 
 146 N.C. App. 715
 
 , 719,
 
 555 S.E.2d 609
 
 , 612 (2001).
 

 The burden of establishing that an issue is barred by collateral estoppel is on the party relying thereon.
 
 Bluebird
 
 ,
 
 188 N.C. App. at 678
 
 ,
 
 657 S.E.2d at 61
 
 . In order for collateral estoppel to apply, a party must establish the following:
 

 (1) [T]he issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.
 

 State v. Summers
 
 ,
 
 351 N.C. 620
 
 , 623,
 
 528 S.E.2d 17
 
 , 20 (2000) (citation omitted). In this case, we conclude that defendant cannot establish that his acquittal of obtaining property by false pretenses represented a determination by the jury that he was not in possession of stolen property shortly after it was taken.
 

 The doctrine of recent possession allows a jury to infer a defendant's guilt based upon the defendant's bare possession of stolen goods shortly after a robbery; there is no requirement that the defendant make a false representation about the goods, attempt to obtain something of value, or deceive another party about the defendant's ownership of the stolen items. We conclude that the offense of obtaining property by false pretenses has only one element in common with the doctrine of recent possession-that the property
 
 *286
 
 in the defendant's possession was stolen.
 
 *274
 
 It is true that the basis of defendant's acquittal of obtaining property by false pretenses might have been the jury's determination that the State had failed to prove beyond a reasonable doubt that the goods pawned by the defendant were stolen. However, the jury may also have acquitted defendant based on insufficient evidence that (1) the defendant knew that the items were stolen, (2) the defendant misrepresented his ownership or dominion over the pawned items, (3) the defendant intended to mislead the employees of the pawn shop, (4) the pawn shop employee was in fact deceived by the defendant (as opposed to being complicit in the sale of stolen property); or that (5) the defendant was paid for pawning the items.
 

 In the context of whether a subsequent prosecution is barred by a defendant's prior acquittal of a related offense, our Supreme Court has stated:
 

 Under the doctrine of collateral estoppel, an
 
 issue
 
 of ultimate fact, once determined by a valid and final judgment, cannot again be litigated between the same parties in any future lawsuit. Subsequent prosecution is barred only if the jury could not rationally have based its verdict on an
 
 issue
 
 other than the one the defendant seeks to foreclose.
 

 Edwards
 
 at 145,
 
 310 S.E.2d at 613
 
 . (emphasis in original). We conclude, upon comparison of the elements of a charge of obtaining property by false pretenses and the doctrine of recent possession, that defendant has failed to show that his acquittal of the crime of obtaining property by false pretenses necessarily required the jury to find that there was insufficient evidence that defendant possessed stolen property. Moreover, in a prosecution for obtaining property by false pretenses, the jury is not required to determine whether the defendant possessed stolen property shortly after it was taken from its owner. As a result, defendant's acquittal of the charge of obtaining property by false pretenses did not bar the State from introducing evidence of the pawn shop ticket, in order to show defendant's recent possession of items stolen in the robbery.
 

 Conclusion
 

 Thus, for the reasons discussed above, we conclude that the trial court did not err by allowing the State to introduce a pawn shop receipt at trial. As this is defendant's only appellate argument, we further conclude that defendant had a fair trial, free of reversible error.
 

 NO ERROR.
 

 Judges CALABRIA and MURPHY concur.