IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-40

Filed 15 October 2025

Edgecombe County, No. 22CVS000007-320

MARITIME ADVISORS, LLC (formerly MARINE INDUSTRY ADVISORS, LLC),
Plaintiff,

v.

HC COMPOSITES, LLC, Defendant.

Appeal by plaintiff from order entered 24 June 2024 by Judge Timothy W. Wilson in Edgecombe County Superior Court. Heard in the Court of Appeals 13 August 2025.

> *Pritchett & Burch, PLLC, by L. Clifton Smith, III, for plaintiff-appellant.*
>
> *Bryant Duke Paris III PLLC, by Bryant Duke Paris III; and Scialdone Law Firm, by Katherine Walton Halliday, for defendant-appellee.*

FLOOD, Judge.

Plaintiff Maritime Advisors, LLC[1] appeals from the trial court's order granting Defendant HC Composites, LLC's motion to dismiss, and denying Plaintiff's motion to amend for substitution or alternatively for joinder of a proper plaintiff (hereinafter Plaintiff's "motion to substitute"). On appeal, Plaintiff argues that the trial court erred in failing to grant Plaintiff's motion to substitute Marine Industry Advisors,

---

[1] Plaintiff's caption in this case is "Maritime Advisors, LLC (formerly Marine Industry Advisors, LLC)"; Plaintiff, however, is a distinct entity from Marine Industry Advisors, LLC.

LLC ("MIA") as the "real party in interest[,]" pursuant to Rule 17 of the North Carolina Rules of Civil Procedure. Upon review, we conclude: first, Plaintiff lacked standing to bring the underlying action; and second, because MIA also lacked standing, the trial court did not abuse its discretion in denying Plaintiff's motion to substitute pursuant to Rule 17 and properly granted Defendant's motion to dismiss. We therefore affirm the trial court's order.

## I. <u>Factual and Procedural Background</u>

On 31 October 2011, MIA was organized under the laws of the Commonwealth of Massachusetts, and Henry Chris Lufkin was listed as the sole managing member of the limited liability company ("LLC"). On 30 June 2016, MIA was involuntarily dissolved. On 26 July 2018, MIA and Defendant entered into a contract titled "Authorized Sales Representation Agreement" (the "Agreement"), which concerned boat sales. MIA and Defendant entered into the Agreement more than two years after MIA was involuntarily dissolved. On 21 October 2018, Plaintiff was formed under the laws of the Commonwealth of Massachusetts as "Maritime Advisors, LLC[,]" and Lufkin was listed as the sole managing member. On 30 June 2021, Plaintiff was also involuntarily dissolved. Plaintiff and MIA had never merged and remain separate entities.

On 4 January 2022, several months following its dissolution, Plaintiff filed a complaint for breach of contract and quantum meruit against Defendant, alleging Defendant breached the Agreement. On 11 March 2024, Defendant filed a motion to

dismiss, arguing Plaintiff lacked standing to file its complaint, and the trial court therefore lacked subject matter jurisdiction. On 25 March 2024, Plaintiff filed its motion to substitute, seeking to substitute or join MIA on the basis that, as of 22 March 2024, MIA had been reinstated. On 24 June 2024, the trial court entered an order granting Defendant's motion to dismiss and denying Plaintiff's motion to substitute. Plaintiff timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review this appeal from a final judgment of a superior court, pursuant to N.C.G.S. § 7A-27(b) (2023).

## III. <u>Standard of Review</u>

"A ruling on a motion to dismiss for want of standing is reviewed de novo." *Ring v. Moore Cnty.*, 257 N.C. App. 168, 170 (2017) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 914 S.E.2d 457, 461 (N.C. Ct. App. 2025) (citation omitted). "In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Ring*, 257 N.C. App. at 170 (citation omitted).

"A trial court's order denying a motion to substitute a party is reviewed for an abuse of discretion." *Key Risk Ins. Co. v. Peck*, 252 N.C. App. 127, 129 (2017). "The test for abuse of discretion requires the reviewing court to determine whether a

decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Troublefield v. AutoMoney, Inc.*, 284 N.C. App. 494, 511 (2022) (citation and internal quotation marks omitted).

## IV. <u>Analysis</u>

On appeal, Plaintiff argues the trial court erred in failing to grant Plaintiff's motion to substitute MIA as the "real party in interest[,]" pursuant to Rule 17 of the North Carolina Rules of Civil Procedure. We address initially whether Plaintiff or MIA, as Plaintiff's alleged substitute, had standing to bring the underlying action.

### A. Plaintiff's Standing

As a preliminary matter, we must address Plaintiff's standing, because "the substantive issues cannot be considered unless the party raising them has the capacity to do so." *Beech Mountain Prop. Owners' Ass'n v. Current*, 35 N.C. App. 135, 136 (1978); *see also Prevette v. Elsner*, 917 S.E.2d 275, 280 (N.C. Ct. App. 2025) ("Before reaching these merits, however, we must first determine whether Plaintiffs have standing to bring this action.").

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter." *Coderre v. Futrell*, 224 N.C. App. 454, 457 (2012) (citation omitted). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Ring*, 257 N.C. App. at 170; *see also Coderre*, 224 N.C. App. at 457 (citation omitted) ("If a party does

not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.").

Under Rule 17 of the North Carolina Rules of Civil Procedure, "[e]very claim shall be prosecuted in the name of the real party in interest[.]" N.C.R. Civ. P. 17(a). "In the context of a breach of contract claim, the parties who *execute* an agreement are real parties in interest and have standing to sue." *King Fa, LLC v. Ming Xen Chen*, 248 N.C. App. 221, 224–25 (2016) (emphasis in original). Rule 17 further provides, however, that

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

N.C.R. Civ. P. 17(a).

Here, Plaintiff lacked standing "so as to properly seek adjudication of the matter." *Coderre*, 224 N.C. App. at 457 (citation omitted). The Agreement was entered between MIA and Defendant; Plaintiff was not a party to the Agreement, was not named in the Agreement, and did not exist at the time of the formation of the Agreement. Additionally, although Lufkin was the sole managing member of both Plaintiff and MIA and signed the Agreement, Lufkin was not a party to the Agreement. Accordingly, because Plaintiff did not execute the Agreement, Plaintiff

was not a "real party in interest," and therefore lacked standing. *See King Fa, LLC*, 248 N.C. App. at 224–25; *see also Coderre*, 224 N.C. App. at 457.

**B. MIA's Standing Pursuant to Motion to Substitute**

We next address whether MIA could be substituted in as a "real part[y] in interest and ha[s] standing to sue." *King Fa, LLC*, 248 N.C. App. at 224–25. Plaintiff argues that the trial court erred in failing to grant Plaintiff's motion to substitute, specifically contending MIA is "not subject to the terms of N.C.G.S. § 105-231"; and that the "Internal Affairs Doctrine" required the trial court to apply the law of Massachusetts "to determine the corporate status and powers of" MIA; and that law allows for ratification of MIA's act of entering into the Agreement with Defendant during the period of MIA's suspension. We agree that MIA is "not subject to the terms of N.C.G.S. § 105-231[,]" and disagree with Plaintiff's argument concerning the internal affairs doctrine.

1. Agreement Ratification Pursuant to North Carolina Law

*a. Applicability of N.C.G.S. § 105-230(b)*

Under N.C.G.S. § 105-230(b), "[a]ny act performed or attempted to be performed during the period of suspension is invalid and of no effect, unless the Secretary of State reinstates the corporation or limited liability company . . . ."

N.C.G.S. § 105-230(b) (2023).[2] This statute "applies only to entities whose articles of incorporation, articles of organization, or certificate of authority have been suspended by the State of *North Carolina*. It does not apply to entities that have been subject to similar actions in other states." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 211–12 (2007) (citation and internal quotation marks omitted) (emphasis in original).

Here, while North Carolina law permits ratification of acts taken by an LLC during a period of suspension, as Plaintiff correctly contends in its brief, this provision applies only to LLCs or corporations suspended by the State of North Carolina. *See id.* at 211–12; *see also* N.C.G.S. § 105-230(b). Accordingly, because MIA was involuntarily dissolved by the Commonwealth of Massachusetts, we agree with Plaintiff that MIA is not subject to N.C.G.S. § 105-230(b). *See Griffith*, 184 N.C. App. at 211–12; *see also* N.C.G.S. § 105-230(b).

b. *Internal Affairs Doctrine*

Under North Carolina law:

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

---

[2] In its brief, Plaintiff cites to the incorrect statute, as N.C.G.S. § 105-231 was recodified as N.C.G.S. § 105-230(b), pursuant to Session Law 1998-212, effective 1 January 1999. *See* N.C.G.S. § 105-231 (2023) (recodified as N.C.G.S. § 105-230(b)).

*Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008). The internal affairs doctrine requires application of the law of the jurisdiction where the foreign corporation is incorporated. *See* N.C.G.S. § 55-7-47 (2023) ("In any derivative proceeding in the right of a foreign corporation, the matters covered by this Part shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation . . . ."); *see also Bluebird Corp.*, 188 N.C. App. at 673, 680—81 (applying the law of New York under the internal affairs doctrine where the plaintiff was a New York corporation); *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997) ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.").

Here, the internal affairs doctrine is inapplicable, because the doctrine applies specifically to the internal affairs of corporations—namely, to "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"—rather than to the internal affairs of LLCs, which are entities separate and distinct from corporations and differing in management structures, operating formalities, and tax statuses. *See Bluebird Corp.*, 188 N.C. App. at 680; *see also Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 636 (2007) ("An LLC is a statutory form of business organization . . . that combines characteristics of business corporations and partnerships . . . . [T]he North Carolina Limited Liability Company Act provides for the formation of a business entity combining the limited liability of a corporation and the more simplified taxation model of a partnership.") (citation and

internal quotation marks omitted). Because MIA is an LLC rather than a corporation, the internal affairs doctrine does not apply to the "internal affairs" of MIA. *See Bluebird Corp.*, 188 N.C. App. at 680; *see also Hamby*, 361 N.C. at 636. Because the internal affairs doctrine is inapplicable, we are not "require[d to] appl[y] the law of the jurisdiction where the foreign corporation is incorporated"—in this instance, the law of Massachusetts—and therefore do not reach Plaintiff's argument concerning ratification of MIA's acts under Massachusetts law. *See* N.C.G.S. § 55-7-47.

## 2. Motion to Substitute

Here, although MIA entered into the Agreement with Defendant, MIA had been involuntarily dissolved prior to the execution of the Agreement, and as explained previously, MIA's act of entering into the Agreement cannot be ratified pursuant to North Carolina law. *See* N.C.G.S. § 105-230(b); *Bluebird Corp.*, 188 N.C. App. at 680. MIA was thus, like Plaintiff, not a "real party in interest," and therefore lacked standing in the underlying action. *See King Fa, LLC*, 248 N.C. App. at 224–25; *see also Coderre*, 224 N.C. App. at 457.

Accordingly, because MIA was not a real party in interest, and thus lacked standing, the trial court did not abuse its discretion in denying Plaintiff's motion to substitute. *See Key Risk Ins. Co.*, 252 N.C. App. at 129. Further, viewing the allegations as true and in a light most favorable to Plaintiff, because both Plaintiff and MIA lacked standing, the trial court lacked subject matter jurisdiction, and therefore properly granted Defendant's motion to dismiss. *See Ring*, 257 N.C. App. at

170; *see also Coderre*, 224 N.C. App. at 457; N.C.R. Civ. P. 17(a); *King Fa, LLC*, 248 N.C. App. at 224–25. We therefore affirm the trial court's order.

## V. **Conclusion**

Upon review, we conclude: first, Plaintiff lacked standing to bring the underlying action; and second, because MIA also lacked standing, the trial court did not abuse its discretion in denying Plaintiff's motion to substitute pursuant to Rule 17 and properly granted Defendant's motion to dismiss. We therefore affirm the trial court's order.

AFFIRMED.

Judges STROUD and FREEMAN concur.