Albright v. Vining-Sparks Secs., Inc., 2019 NCBC 80.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

CURT ALBRIGHT,

        Plaintiff,

        v.

VINING-SPARKS SECURITIES, INC.,
and VINING-SPARKS &
ASSOCIATES, L.P.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 18223

**ORDER AND OPINION ON
DEFENDANTS' 12(b) AND 12(c)
MOTIONS**

1.     THIS MATTER is before the Court on Defendants' Motion to Dismiss Claims I and II of Plaintiff's First Amended Complaint (the "Motion to Dismiss"), and Defendants' Motion for Judgment on the Pleadings as to Claim III of Plaintiff's First Amended Complaint (the "Motion for Judgment on the Pleadings") (collectively, the "Motions"). For the reasons stated below, the Motions are DENIED.

*Robinson Bradshaw & Hinson, PA, by Benjamin C. DeCelle and R. Steven DeGeorge, for Plaintiff.*

*Johnston, Allison & Hord, P.A., by Patrick E. Kelly and Michael J. Hoefling, for Defendants.*

Gale, Judge.

## I.    INTRODUCTION

2.     Plaintiff Curt Albright ("Albright" or "Plaintiff") filed this suit in his capacity as a limited partner of Vining-Sparks & Associates, LP ("Vining-Sparks, LP"), asserting his rights to examine books and records under Vining-Sparks, LP's Limited Partnership Agreement (the "LPA") ("Claim I") and pursuant to a statutory

right provided by Tenn. Code Ann. § 61-2-304 ("Section 61-2-304") under the Tennessee Limited Partnership Act ("TLPA") ("Claim II"), and requesting a declaration that the express terms of the LPA provided for the automatic dissolution and winding up of Vining-Sparks, LP on December 31, 2010 because a 2004 effort to extend its life indefinitely was ineffective ("Claim III").

3. Defendants filed the Motion to Dismiss Claims I and II on alternative grounds. First, Defendants contend that this Court has no subject matter jurisdiction over either claim because Section 61-2-304(f) dictates that only courts in Shelby County, Tennessee have jurisdiction over any claim for inspection of Vining-Sparks, LP's records as a Tennessee limited partnership. Alternatively, if the Court determines it has subject matter jurisdiction, Defendants contend that the Court should dismiss the claims because venue is improper where the parties consensually agreed to an exclusive Tennessee forum by incorporating Section 61-2-304(f) into the LPA.

4. Assuming the Court determines it has subject matter jurisdiction, Defendants move for judgment on the pleadings with respect to Claim III based on their contention that Defendants have now provided Albright copies of the signatures of all partners necessary to prove that the amendment Albright's claim challenges was validly enacted. Albright counters first that the signatures are outside the pleadings and cannot be considered, and second, even if considered, they do not conclusively establish that the amendment is enforceable.

## II.  FACTUAL BACKGROUND

5.  A Court does not make findings of facts on a 12(c) motion.  *See Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) ("All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.").  While it has authority to make such findings when considering a motion based on North Carolina Rules of Civil Procedure ("Rule(s)") 12(b)(1) and 12(b)(3), it is only required to do so when requested by the parties, which is not the case here.  *See* N.C.G.S. § 1A-1, Rule 52(a)(2).  Accordingly, the Court summarizes the factual contentions only to provide context for its rulings.

### A.  The Parties

6.  Albright is a limited partner of Vining-Sparks, LP.  (First Am. Compl. ¶ 1, ECF No. 14.)  Vining-Sparks, LP is a Tennessee limited partnership created to hold an interest in Vining-Sparks IBG, LP ("VSIBG"), another Tennessee limited partnership that is not a party in this lawsuit. (First Am. Compl. ¶ 2.)  Albright was employed by VSIBG from May 1991 until he retired in August 2017.  (First Am. Compl. ¶ 3.)  Albright acquired approximately twenty ownership units in Vining-Sparks, LP throughout his career with VSIBG.  (First Am. Compl. ¶ 8.)

7.  Defendant Vining-Sparks Securities, Inc. ("Vining-Sparks, Inc.") is a Delaware corporation and the general partner of Vining-Sparks, LP.  (First Am. Compl. ¶ 5.)

### B. Albright's Demand for Records Review

8. When approaching retirement, Albright contacted Martin Shea ("Shea"), VSIBG's executive vice-president and general counsel, to inquire about selling his Vining-Sparks, LP units, and was advised that that he would not be able to sell them at that time. (First Am. Compl. ¶ 12.)

9. In May 2018, after discovering that Shea had helped other former employees sell similar units, Albright requested certain information and records to discern whether he was being treated differently than other limited partners. (First Am. Compl. ¶¶ 13–14.)

10. Albright filed this lawsuit following several unanswered record requests, (*see* First Am. Compl. ¶ 14), asserting that he is entitled to an inspection of Vining-Sparks, LP's records on two grounds, one contractual and one statutory.

11. The LPA provides all limited partners of Vining-Sparks, LP a right to inspect books and records at any reasonable time:

> True and complete records and books of account of the business of the Partnership, in which shall be entered fully and accurately all Partnership transactions, shall be kept at the Principal Place of Business. Such books, together with a certified copy of the Certificate of Limited Partnership, and this Agreement, shall be open to inspection by any then inspecting Partner or his representatives at any reasonable time during business hours.

(Third Am. & Restated Agreement Ltd. P'ship § 9.2(a) ("LPA"), ECF No. 32.)

12. The TLPA provides:

> (b) Each limited partner has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished, at what time and location and at whose expense) as may be set forth in the partnership agreement or otherwise

established by the general partners, to obtain from the general partners, from time to time, upon reasonable demand for any purpose reasonably related to the limited partner's interest as a limited partner:

> (1) True and full information regarding the status of the business and financial condition of the limited partnership;
>
> (2) Promptly after becoming available, a copy of the limited partnership's federal, state and local income tax returns for each year;
>
> (3) A current list of the name and last known business, residence or mailing address of each partner;
>
> (4) A copy of any written partnership agreement and certificate of limited partnership and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the partnership agreement and any certificate and all amendments thereto have been executed;
>
> (5) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each partner and which each partner has agreed to contribute in the future, and the date on which each became a partner; and
>
> (6) Other information regarding the affairs of the limited partnership as is just and reasonable.

Tenn. Code Ann. § 61-2-304(b).

13. An action based on the statutory inspection right under the TLPA is subject to a provision which provides that "[a]ny action to enforce any right arising under [Section 61-2-304] shall be brought in a court of record." *Id.* at § 61-2-304(f). "Court of record" is defined as "a court of equity jurisdiction in the county where the partnership maintains its registered office, or if it maintains no registered office in any county, then in a court of equity jurisdiction in Davidson County." *Id.* at § 61-2-101(4).

14. After Albright filed his Complaint, Vining-Sparks, Inc. provided some but not all the documentation that Albright requested, including all iterations of the LPA, which has been amended on multiple occasions. (First Am. Compl. ¶ 15.)

15. With respect to the "Term of Partnership," the first three iterations of the LPA state that it should "continue until December 31, 2010, unless sooner terminated by operation of law or as otherwise provided herein."[1] (First Am. Compl. ¶ 16.)

16. On or about September 30, 2004, Defendants sought to approve an amendment which would provide that the "Term of Partnership" of Vining-Sparks, LP would continue indefinitely. (First Am. Compl. ¶ 20.) Albright alleges "[u]pon information and belief, the purported amendment to the term of Vining-Sparks LP . . . was made without the required 'consent of all Partners.'" (First Am. Compl. ¶ 21.)

17. Defendants have now provided Albright with certain signatures, which Defendants contend represent the signatures necessary to effectuate the amendment providing for indefinite duration. Defendants contend and Plaintiff denies that the Court can consider this documentary evidence in connection with the Motion for Judgment on the Pleadings.

---

[1] In this Opinion the Court cites to the Third Amended and Restated LPA, which is the only version that the Court has been provided.

## III. PROCEDURAL BACKGROUND

18. On September 18, 2018, Albright filed his Complaint against only Vining-Sparks, Inc. for breach of contract and violation of Section 61-2-304. (Compl., ECF No. 3.)

19. On October 22, 2018, Vining-Sparks, Inc. moved to dismiss all claims for lack of subject matter jurisdiction (the "First Motion to Dismiss"). (Defs.' Mot. Dismiss for Lack Subject Matter Jurisdiction, ECF No. 6.)

20. On November 26, 2018, after briefing but before oral argument on the First Motion to Dismiss, Albright filed the First Amended Complaint to add a third claim for declaratory judgment and Vining-Sparks, LP as a defendant. Albright filed his First Amended Complaint before Defendants responded to Albright's request that "Defendants provide evidence of the required consents[.]" (First Am. Compl. ¶ 21.)

21. On December 20, 2018, Defendants provided Albright with documents which Defendants contend demonstrate that all partners consented to the disputed amendment to the partnership term. (*See* Pl.'s Notice Offer Voluntarily Dismiss Third Claim for Relief ¶¶ 2–3 ("Pl.'s Offer Dismiss"), ECF No. 24.)

22. On December 26, 2018, Defendants moved to dismiss the first and second claims in the First Amended Complaint for breach of contract and violation of Section 61-2-304. (Def.'s Mot. Dismiss Claims I & II Pl.'s Am. Compl. ("Mot. Dismiss"), ECF No. 17.) Defendants answered the First Amended Complaint on the same day. (*See* Defs.' Answer First Am. Compl. ("Answer First Am. Compl."), ECF No. 19.)

23. The parties continued to discuss whether Claim III could be resolved by agreement in light of the signatures produced by Defendants in December 2018.

24. On January 11, 2019, after the parties failed to reach an agreement, Defendants filed the Motion for Judgment on the Pleadings as to Claim III—Albright's declaratory judgment claim. (*See* Def.'s Mot. J. Pleadings as to Claim III Pl.'s First Am. Compl. ("Mot. J. Pleadings"), ECF No. 21.)

25. On January 16, 2019, Albright, uncertain as to the import of the documents Defendants had produced, offered to voluntarily dismiss the declaratory judgment claim if Defendants would sign an affidavit stating that "[a]ll Partners of Vining-Sparks, LP, including Limited Partners, consented to the terms of the [Third Amended and Restated Agreement of Limited Partnership] as of September 30, 2004. Such consent is evidenced by the [signatures]." (Pl.'s Offer Dismiss ¶ 5.) Defendants declined to sign the affidavit.

26. The Court heard oral arguments on the Motions (the "Hearing"). Following the Hearing, the Court accepted supplemental briefing on the issue of whether the parties had agreed to an exclusive Tennessee forum selection clause by incorporating the TLPA into the LPA.

27. The Motions have been fully briefed and heard and are now ripe for determination.

## IV. STANDARD OF REVIEW

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

28. A 12(b)(1) motion to dismiss attacks a court's "jurisdiction over the subject matter" of the plaintiff's claims. N.C.G.S. § 1A-1, Rule 12(b)(1). "Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy[,]" *Hardy v. Beaufort Cty. Bd. of Educ.*, 200 N.C. App. 403, 408, 683 S.E.2d 774, 778 (2009) (citing *Harris v. Pembaur*, 84 N.C. App. 666, 667–68, 353 S.E.2d 673, 675 (1987)), and "has been defined as 'the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment,'" *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941) (citations omitted).

29. The plaintiff bears the burden of establishing subject matter jurisdiction. *Harper v. City of Asheville*, 160 N.C. App. 209, 217, 585 S.E.2d 240, 245 (2003). "[T]he proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964) (citing *High*, 220 N.C. at 271, 17 S.E.2d at 112).

### B. 12(b)(3) Motion to Dismiss for Improper Venue

30. A Rule 12(b)(3) motion is the proper method by which to seek enforcement of an exclusive forum selection clause, *see Hickox v. R&G Grp. Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003) (stating that "[f]undamentally, 'a forum selection clause designates the venue,' and therefore . . . Rule 12(b)(3) would be most applicable"), and does not challenge a "trial court's power to entertain the

subject matter of [a] suit" but "serves only to question the propriety . . . [of a] venue for the action," *State ex rel. Edmisten v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 912 (1980). "The motion should accordingly be treated as one to remove the action, not dismiss it." *Id.*; *see* N.C.G.S. § 1A-1, Rule 12(a)(1)(b)(2).

### C. 12(c) Motion for Judgment on the Pleadings

31. "Judgment on the pleadings is 'appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Judgments on the pleadings are disfavored in law[.]'" *Zloop, Inc. v. Parker Poe Adams & Bernstein, LLP*, 2018 NCBC LEXIS 16, at *12–13 (N.C. Super. Ct. Feb. 16, 2018) (citing *Shehan v. Gaston Cty.*, 190 N.C. App. 803, 806, 661 S.E.2d 300, 303 (2008)). "When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1367 (1969)).

32. On a 12(c) motion,

> [t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for the purposes of the motion.

*Id.* (internal citations omitted).

33. Generally, "[i]n deciding a motion for judgment on the pleadings, the trial court looks solely to the pleadings," *Reese v. Mecklenburg Cty.*, 204 N.C. App. 410, 421, 694 S.E.2d 453, 461 (2010) (citing *Wilson v. Crab Orchard Dev. Co.*, 276

N.C. 198, 206, 171 S.E.2d 873, 878 (1970)), because if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56," N.C.G.S. § 1A-1, Rule 12(c).

34. Matters inside the pleadings which may be considered without converting the motion to one for summary judgment include "documents . . . attached to and incorporated within a complaint[.]" *Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 30, 732 S.E.2d 614, 617 (2012) (quoting *Estate of Means v. Scott Elec. Co., Inc.*, 207 N.C. App. 713, 717, 701 S.E.2d 294, 297 (2010). A "document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 205, 652 S.E.2d 701, 708 (2007); *see Reese v. Mecklenburg Cty.*, 196 N.C. App. 539, 544–46, 676 S.E.2d 481, 485–86 (2009) (holding that trial court did not commit error by considering document attached to moving party's answer because it memorialized events referenced in complaint and plaintiff did not dispute its accuracy).

35. Additionally, a court may consider "a contract which is the subject matter of an action . . . and does not create justifiable surprise to the nonmoving party[,]" *Oberlin Cap., LP v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citing *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979)), and other "documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant,"

*Id.* at 60–61, 554 S.E.2d at 847 (citing *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988)).

36. Matters outside of the pleadings include affidavits, factual assertions in briefs, and the arguments of counsel. *Horne*, 223 N.C. App. at 30–31, 732 S.E.2d at 617; *see Groves v. Cmty. Hous. Corp. of Haywood Cty.*, 144 N.C. App. 79, 86, 548 S.E.2d 535, 540 (2001) (treating judgment of lower court as one made pursuant to Rule 12(c) because "record on appeal contain[ed] no affidavits, answers to interrogatories, or transcripts of arguments by counsel"); *Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867 (1984) (treating lower court's judgment as one made pursuant to Rule 56 because record contained affidavits); *Town of Bladenboro v. McKeithan*, 44 N.C. App. 459, 460, 261 S.E.2d 260, 261 (1980) ("[Where] the pleadings and the record on appeal contains no affidavits, answers to interrogatories, or anything else other than the pleadings upon which to base the decision, the court's entry of judgment will be deemed to have been made under G.S. 1A-1, Rule 12(c)[.]").

## V. ANALYSIS

### A. The Motion to Dismiss

37. Defendants contend that Claims I and II must be dismissed for lack of subject matter jurisdiction because they are "expressly grounded" on the TLPA, "which mandates that actions to compel production of partnership documents pursuant to the TLPA must be filed in the place where the partnership is located[.]" (Mot. Dismiss 1.) At the Hearing, Defendants conceded that their subject matter jurisdiction argument is more properly directed against Claim II—the statutory

inspection rights claim, while their argument for dismissal of Claim I—the contractual inspection rights claim, is more accurately characterized as an argument of improper venue. The Court first addresses its subject matter jurisdiction.

### (1) Subject Matter Jurisdiction (Claim II)

38. Albright argues first that Section 61-2-304(f) does not evince a legislative intent to mandate exclusive jurisdiction, and second that even if it did, Tennessee "constitutionally may not[] impose a blanket prohibition against persons filing suit in federal courts and other states' courts." (Pl.'s Br. Opp'n Defs.' Mot. Dismiss Claims I & II First Am. Compl. 4–5 ("Pl.'s Br. Opp'n Mot. Dismiss Claims I & II"), ECF No. 23.)

### a. Tennessee's Legislative Intent

39. The "primary aim in construing any statute 'is to ascertain and give effect to the intent and purpose of the legislature.'" *Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010) (quoting *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008)). "Whenever possible, [Tennessee courts] discern legislative intent 'from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" *Id.* (quoting *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000)). When "faced with clear, unambiguous language, '[a court] must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application.'" *Id.* (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)).

40.     Section 61-2-304(f) states that "[a]ny action to enforce any right arising under this section shall be brought in a court of record." Albright argues that Section 61-2-304(f) means only that, *if* an action is filed in Tennessee, the proper Tennessee court is limited to one located in the partnership's home county of Shelby, and does not further prohibit an action being filed outside of Tennessee.

41.     Admitting an absence of specific precedent construing Section 61-2-304(f), Albright highlights other Tennessee statutes in which the legislative intent to establish exclusive jurisdiction is manifest and urges that the absence of similar language in Section 61-2-304(f) necessarily supports the negative inference that Tennessee's legislature did not intend Section 61-2-304(f) to establish exclusive jurisdiction. (*See* Pl.'s Br. Opp'n Mot. Dismiss Claims I & II 7–8 (citing several Tennessee statutes explicitly referring to "exclusive" jurisdiction)); *see, e.g.*, Tenn. Code Ann. § 9-8-307(a)(1) (stating that the Tennessee Claims Commission "has exclusive jurisdiction to determine all monetary claims against the state based on [certain] acts or omissions of 'state employees'"); *id.* at § 16-10-102 ("The circuit court has exclusive original jurisdiction of all crimes and misdemeanors, either at common law or by statute, unless otherwise expressly provided by statute or this code."); *id* at § 36-6-217(a) (stating that "a court of this state which has made a child-custody determination . . . has exclusive, continuing jurisdiction"); *id* at § 67-1-1804 (stating that "[t]he procedure established by this part is the sole and exclusive jurisdiction for determining liability for all taxes collected or administered by the commissioner of revenue, except that the state board of equalization shall have jurisdiction concurrent

with the chancery court in inheritance tax cases in which only issues of valuation are raised").

42.     Defendants counter that the negative inference Plaintiff advocates is precluded by the legislature's choice of wording, which states that "*[a]ny action* to enforce any right under this section *shall* be brought in the court of record," thus indicating that all actions must be brought in Tennessee. (Defs.' Reply to Pl.'s Suppl. Br. 3, ECF No. 31 (emphasis in original).)

43.     In the absence of Tennessee authority, Defendants rely on a decision of Judge Michael Robinson of this Court dismissing an inspection rights claim for lack of subject matter jurisdiction that was brought by a member of a Delaware limited liability company pursuant to Del. Code Ann. tit. 6, § 18-305(a). *See Camacho v. McCallum*, 2016 NCBC LEXIS 81, at *7–10 (N.C. Super. Ct. Oct. 25, 2016). *Camacho* does not support the dismissal Defendants seek, however.

44.     Unlike Section 61-2-304(f), and like the Tennessee statues that Albright cites in contrast to Section 61-2-304(f), the Delaware inspection rights statute applied in *Camacho* evidences a clear legislative intent by providing that Delaware's Court of Chancery is "*vested with exclusive jurisdiction* to determine whether or not the person seeking such information is entitled to the information sought." Del. Code Ann. tit. 6, § 18-305(f) (emphasis added); *see Camacho*, 2016 NCBC LEXIS 81, at *9 ("Section 18-305 is explicit that an action under that section must be brought in the

Court of Chancery and the Court of Chancery has exclusive jurisdiction to determine whether the member is entitled to the information requested.").[2]

45. In contrast, Section 61-2-304(f) does not plainly express an intent to limit jurisdiction over inspection claims—in fact, it does not mention "jurisdiction" at all. *Compare Memphis Managed Care Corp. v. State Dep't of Com. & Ins.*, No. M2007-02437-COA-R3-CV, 2009 Tenn. App. LEXIS 39, at *8–10 (Tenn. Ct. App. Jan. 14, 2009) (noting that Tennessee Claims Commission had exclusive jurisdiction to determine certain claims against state where Claims Commission, according to statute, was "sole and exclusive jurisdiction for determining tax liability"), *with Freels v. Northrup*, 678 S.W.2d 55, 58 (Tenn. 1984) (concluding that Tenn. Code Ann. § 60-1-202, which did not use the word "jurisdiction," gave "no indication of a legislative

---

[2] Although Plaintiff contends that Defendants' analogy to Delaware's inspection rights statute is unpersuasive because Delaware's legislature exceeded its constitutional powers by restricting litigation outside of Delaware, and in this Opinion this Court addresses constitutional limitations to Tennessee's power to limit jurisdiction outside of Tennessee, the Court does not opine on the constitutionality of Delaware's statutes. *But compare Intertrust GCN, LP v. Interstate Gen. Media, LLC*, 2014 Phila. Ct. Com. Pl. LEXIS 434, at *6–9 (Phila. Ct. Com. Pl. Feb. 11, 2014) (stating that it did not have jurisdiction over Delaware judicial dissolution claim), *and Foti v. W. Sizzlin Corp.*, 64 Va. Cir. 64, 64 (Va. Cir. Ct. 2004) (holding that the Delaware Court of Chancery had exclusive jurisdiction over statutory inspection), *with Truck Components, Inc. v. Beatrice Co.*, 143 F.3d 1057, 1062 (7th Cir. 1998) (opining that 8 Del. Stat. §145(k), as "an intra-state allocation has no effect on federal litigation" but "allocates jurisdiction among Delaware courts" because "Delaware maintains separate systems of courts in law and equity" and "[c]laims based on corporate arrangement go to the Court of Chancery"), *Anderson v. Child.'s Corner, Inc.*, No. CV106011812S, 2011 Conn. Super. LEXIS 335, at *6–9 (Conn. Super. Ct. Feb. 15, 2011) (determining Delaware statute did not deprive it of jurisdiction after reviewing legislative history), *and Sachs v. Adeli*, 26 A.D.3d 52, 55 (N.Y. App. Div. 2005) (holding that Delaware statute did not mandate that case be tried in Delaware because "[a] statute or rule of another State granting the courts of that State exclusive jurisdiction over certain controversies does not divest the New York courts of jurisdiction").

intention to vest exclusive jurisdiction over drilling unit participation in the Oil and Gas Board").

46.     The Court must, however, separately consider Tennessee's local action doctrine, which implies a limiting jurisdictional effect even where a statute does not explicitly state that it limits subject matter jurisdiction:

> Tennessee courts have held in a variety of contexts that when the legislature eliminates the option of venue wherever the defendant may be found and otherwise specifies venue for an action, the lawsuit becomes a "local action."  Thus, in a number of areas, the Tennessee courts have "localized" venue, converting it into a rule of subject matter jurisdiction.

June F. Entman, *Abolishing Local Action Rules: A First Step toward Modernizing Jurisdiction and Venue in Tennessee*, 34 U. Mem. L. Rev. 251, 255 (2004) (hereinafter "Entman, *Abolishing Local Action Rules*"); *see Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 753 (Tenn. Ct. App. 2002) ("Otherwise transitory actions are considered to be local when a statute prescribes a particular county in which they must be brought.  In fact, venue statutes evince [a] legislative purpose to localize transitory actions." (internal citations omitted)).  Where a transitory action has been localized by statute, "venue has become part of the court's authority to hear a particular action and is, therefore, jurisdictional."  *Hawkins*, 127 S.W.3d at 753–54 (citing cases).

47.     Those venue statutes that localize certain claims generally either pertain to: (a) actions brought in Tennessee, *see, e.g.*, Tenn. Code Ann. § 20-4-101 (localizing transitory actions brought in Tennessee to a particular county unless venue is otherwise provided for); *see also Pack v. Ross*, 288 S.W.3d 870, 872 (Tenn. Ct. App. 2008) ("The *Courts of our State* have no jurisdiction of local actions brought

in the wrong county[.]" (emphasis added) (quoting *Curtis v. Garrison*, 364 S.W.2d 933, 936 (Tenn. 1963))); (b) claims against state agencies, *see, e.g.*, Tenn. Code Ann, § 57-3-407 (requiring actions against the Alcoholic Beverage Commission to be brought in Davidson County); or (c) claims involving particular state interests, *see, e.g.*, *id.* at § 41-21-803 (localizing claims brought by plaintiff inmate to county in which his or her facility is located). As such, there is no reason for this Court to extend those holdings to an action brought outside of Tennessee, especially where Tennessee courts recognize that "[r]epeals of jurisdiction of the courts by implication are disfavored in the law." *Freels*, 678 S.W.2d at 58 (citing first *Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978), then *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)).

48.     In the absence of Tennessee precedent clearly directing otherwise, the Court therefore finds no conclusive legislative intent in Section 61-2-304(f) to establish exclusive jurisdiction in Tennessee courts. *See id.* ("In the absence of a clear showing of legislative intent to do so, courts will not infer that the enactment of a particular statute has the effect of withdrawing from the courts their traditional equitable powers.").

49.     While this holding is alone dispositive of Defendants' Motion to Dismiss Claim II, the Court will address the constitutional arguments the parties have raised, as well as Defendants' suggestion that this Court should abstain from any exercise of jurisdiction as a matter of policy.

### b. Constitutional Considerations

#### i. Power to Mandate Exclusive Jurisdiction

50. Albright argues that the holdings of *Tennessee Coal, Iron & Railroad Company v. George*, 233 U.S. 354 (1914), and its progeny preclude Tennessee from mandating the exclusive jurisdiction Defendants champion.

51. In *Tennessee Coal*, the U.S. Supreme Court decided whether the Full Faith & Credit Clause of the U.S. Constitution deprived a Georgia court of subject matter jurisdiction over a claim brought under an Alabama code creating a cause of action for employees injured by defective workplace machinery, when that code required those actions "be brought in a court of competent jurisdiction within the State of Alabama and not elsewhere." *Tenn. Coal*, 233 U.S. at 358–59. The Supreme Court ultimately decided that the Alabama statute did not divest Georgia courts of subject matter jurisdiction because "a State cannot create a *transitory* cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction." *Id.* at 360 (emphasis added); *see Marshall v. Marshall*, 547 U.S. 293, 314 (2006) ("Jurisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . . , even though it created the right of action.'" (quoting *Tenn. Coal*, 233 U.S. at 360)); *see also Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961) ("The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state.").

52.     In reaching its holding, the *Tennessee Coal* Court distinguished between statutes creating general liability without a remedy and claims for which the "right and remedy are so united that the right cannot be enforced except in the manner and before the tribunal designated by the [governing] act." *Tenn. Coal*, 233 U.S. at 358–59. "[W]here the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed." *Id.* at 359 (quoting *Pollard v. Bailey*, 87 U.S. 520, 527 (1874)); *see Galveston, Harrisburg. & San Antonio Ry. Co. v. Wallace*, 223 U.S. 481, 490 (1912) ("Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right."). The Supreme Court further explained that recognizing exclusive jurisdiction over a transitory claim would deprive the plaintiff "of a fixed right," if the defendant left Alabama and the plaintiff could no longer bring suit "because the statute did not permit a suit elsewhere than in Alabama." *Tenn. Coal*, 233 U.S. at 359.

53.     In sum, *Tennessee Coal* stands for the proposition that one state may not divest another of jurisdiction over transitory claims for which "right and remedy" are not "so united that the right cannot be enforced except in the manner and before the tribunal designated by the [governing] act." *Id.* at 358–59. Applying this standard, the Court concludes that Defendants' argument for exclusive jurisdiction is unavailing because the statutory inspection right is transitory rather than local, and the inspection remedy is not a special remedy requiring enforcement by a particular tribunal.

54. "Actions are transitory when the transaction on which they are based might take place anywhere, and are local when they could not occur except in some particular place." *Howle v. Twin States Express, Inc.*, 237 N.C. 667, 671, 75 S.E.2d 732, 736 (1953). Historically, transitory claims have been characterized as ones involving injury to the person, whereas local claims relate to immovable property. *See Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("[P]ersonal injuries are of a transitory nature[.]"); *Blevens v. Kitchen Lumber Co.*, 207 N.C. 144, 146, 176 S.E. 262, 263 (1934) (citing *Mason v. Warner*, 31 Mo. 508, 510 (Mo. 1862) ("My horse or my steamboat being movable, is the subject of injury . . . as well in one state as another; but this [cannot] be affirmed of my land, which is immovable.")); *see also Wylie v. Farmers Fertilizer & Seed Co.*, No. W2002-01227-COA-R9-CV, 2003 Tenn. App. LEXIS 589, at *6 (Tenn. Ct. App. Aug. 21, 2003) ("A transitory action is one in which the injury occurred to a subject not having an immovable location; therefore a transitory action could have occurred anywhere. Typical examples of transitory actions are actions sounding in tort and contract.").

55. That a partnership or corporation may maintain its books and records exclusively at its home office does not mandate the conclusion that a claim to inspect those records is localized. *See Nettles v. McConnell*, 43 So. 838, 839 (Ala. 1907) ("[T]he right of the stockholders to their inspection is transitory."). Entities often accommodate an inspection demand by providing copies of requested books and records remotely to preclude an owner from appearing at the entity's physical offices, for example.

56.     Further, the Court does not read Section 61-2-304 to create a remedy that can only be implemented by a particular tribunal.  *See* Entman, *Abolishing Local Action Rules*, at 326 ("'Localized' venue, in the parlance of Tennessee decisions, has nothing to do with the traditional local action concept that some actions are inherently tied to a situs because of the nature of the claim or the remedy sought.").

57.     Section 61-2-304 sets forth no "prescribed statutory remedy available only in" Shelby County that is "inextricably bound up with" the right to inspect limited partnership materials, and thus the Court finds those cases upholding the jurisdiction of a foreign court more analogous than those reaching the opposite conclusion.  *Compare Crider v. Zurich Ins. Co.*, 380 U.S. 39, 42 (1965) (holding that Alabama court had jurisdiction over action arising under Georgia's workers compensation act), *Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1151 (5th Cir. 1985) (holding that wrongful discharge controversy was a transitory action and that "venue [wa]s no part of the right" though Saudi labor law division mandated that the case be heard by Saudi Arabian labor Commission), *and Tex. Pipe Line Co. v. Ware*, 15 F.2d 171, 174 (8th Cir. 1926) (deciding that right of compensation for personal injury under Louisiana Act did not require enforcement in particular tribunal), *with Arabian Trading & Chem. Indus. Co. v. B.F. Goodrich Co.*, 823 F.2d 60, 64 (4th Cir. 1987) (opining that action to enforce Saudi statute must be dismissed because Maryland courts lacked authority to grant relief: payment to fund sponsored by Saudi government), *Taylor v. LSI Logic Corp.*, 715 A.2d 837, 839–40 (Del. 1998) (dismissing case brought under Canada Business Corporations Act because "oppression remedy"

sought was available only from Court of the Queen's Bench), *and Cal. ex rel. Houser v. St. Louis Union Tr. Co.*, 260 S.W.2d 821, 830 (Mo. Ct. App. 1953) (finding that "a right (to levy an inheritance tax) [wa]s inextricably bound up with a prescribed statutory remedy available only in California").

58. Consistent with *Tennessee Coal*, the Court therefore concludes that by exercising subject matter jurisdiction over Claim II this Court does not divest Section 61-2-304(f) of its intended effect and gives Tennessee's laws full faith and credit.

## ii. **Abstention**

59. Defendants argue that even if this Court determines that it has subject matter jurisdiction over Claim II, it should abstain from exercising its jurisdiction in order to "avoid the possibility of interpreting Tennessee law contrary to the Tennessee legislature's intent." (Defs.' Reply to Pl.'s Br. Opp'n to Defs.' Mot. Dismiss Claims I & II First Am. Compl. 4, ECF No. 25.) Returning to their reliance on Judge Robinson's holding in *Camacho,* Defendants seek to compare Section 61-2-304(f) to the Delaware inspection right statute considered by Judge Robinson because Delaware's Supreme Court explained that jurisdiction over that statute was limited to the Court of Chancery to encourage uniformity of interpretation. *See Camacho*, 2016 NCBC LEXIS 81, at *9–10 (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 292 (Del. 1999)).

60. The Court again concludes that Defendants stretch their statutory comparison too far when Section 61-2-304(f) does not plainly express an intent to limit jurisdiction, but there is an even more fundamental principle at play that argues

against abstention: this case presents none of the circumstances of public policy upon which North Carolina abstention decisions have been based. While North Carolina recognizes several limited abstention doctrines, they are not pertinent to the policy concern raised by Defendants.[3] Federal abstention doctrines recognize that in certain instances federal courts should step aside to allow the states to interpret and apply novel or complex issues of state law as well as those that pertain to a state's sovereign interests, *see* 28 U.S.C. § 1367(c) (permitting federal courts to abstain from exercising supplemental jurisdiction over state law claims that involve "novel or complex" state-law issues); *Harrison v. NAACP*, 360 U.S. 167, 176 (1959) (holding that "federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass on them"); *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959) (approving federal district court's decision to stay case to allow state court to decide issue of such great public importance that federal determination would infringe on state sovereignty); *Burford v. Sun Oil Co.*, 319 U.S. 315, 334–36 (1943) (permitting federal courts to abstain where state courts have greater expertise in complex areas of state law), but North Carolina's courts have not adopted those doctrines.

---

[3] For example, North Carolina courts are bound by the ecclesiastical abstention doctrine, which bars North Carolina courts from adjudicating "ecclesiastical matters of a church," *Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 327, 605 S.E.2d 161, 163 (2004), and the pending action doctrine, which prevents multiple actions that "present a substantial identity as to parties, subject matter, issues involves, and relief demanded," *Jessee v. Jessee*, 212 N.C. App. 426, 438, 713 S.E.2d 28, 37 (2011). North Carolina also recognizes the exclusive jurisdiction of tribal courts over certain matters. *See, e.g.*, *In re Adoption of K.L.J. & K.P.J.*, No. COA17-1390, 2019 N.C. App. LEXIS 604, at *6–7 (N.C. Ct. App. July 16, 2019) (deferring to tribal court's jurisdiction over adoption of Cheyenne River Sioux children).

61. In sum, the Court concludes that: (1) the language of Section 61-2-304(f) does not manifest a clear legislative intent to localize inspection right claims under the TLPA and Tennessee's courts have not had the opportunity to provide further guidance as to the intent of the legislature in enacting that section; (2) if the Court had found such intent, the constitutional doctrine recognized in *Tennessee Coal* would preclude its enforcement; and (3) there is no basis for the Court to abstain from exercising the subject matter jurisdiction with which it is vested. Accordingly, Defendants' Motion to Dismiss pursuant to 12(b)(1) should be denied.

## (2) Venue (Claim I)

62. Defendants contend that, having found that it is vested with subject matter jurisdiction, the Court should dismiss Claim I for improper venue because the parties impliedly agreed to a forum selection clause mandating that an action under the LPA proceed only in Tennessee. Defendants' argument rests on the premise that the LPA's choice-of-law clause incorporates the TLPA, and because the TLPA includes Section 61-2-304(f), Albright agreed that the courts of Shelby County, Tennessee have exclusive jurisdiction over claims brought under the LPA. In opposition, Plaintiff first asserts that Defendants' Motion to Dismiss did not properly present the issue of venue, and in any event, Defendants' challenge should be rejected because the LPA does not include a binding forum selection clause.

### a. The Issue of Venue is before the Court

63. A Rule 12(b)(3) motion is the proper vehicle to enforce a contractual forum selection clause. *Sony Ericsson Mobile Comms. USA, Inc. v. Agere Sys., Inc.*,

2007 NCBC LEXIS 28, at *4 (N.C. Super. Ct. Aug. 27, 2007) (citing *Hickox*, 161 N.C. App. at 511, 588 S.E.2d at 567).  Because Defendants' motion was brought "pursuant to Rule 12(b) of the Rules of Civil Procedure . . . to dismiss Claims I and II of Plaintiff's Amended Complaint *for lack of subject matter jurisdiction*[,]" (Mot. Dismiss 1 (emphasis added)), Plaintiff argues that the motion should then be confined to Rule 12(b)(1).  Defendants contend that the question of venue was placed at issue and can now be considered because Defendants denied Plaintiff's averment of proper venue in their Answer.

64.    In seeking to preclude the Court's consideration of venue, Albright relies on *Lendingtree, LLC v. Anderson*, 228 N.C. App. 403, 747 S.E.2d 292 (2013). However, *Lendingtree* did not vary the traditional reading of Rule 12 which provides that "a venue objection [may be raised] in either: (i) a responsive pleading; or (ii) a motion to dismiss under [N.C.G.S. § 1A-1, Rule] 12(b)(3)." *Lendingtree*, 228 N.C. App. at 409, 747 S.E.2d at 297; *see* N.C.G.S. § 1A-1, Rule 12(h)(1) ("A defense of . . . improper venue . . . is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading[.]").[4]

65.    The Court concludes that the issue of venue is properly before the Court for its consideration.

---

[4] A motion for improper venue under Rule 12(b)(3) must be filed prior to or contemporaneous with an answer unlike a motion for change of venue for the convenience of witnesses under N.C.G.S. § 1-83, which must be filed after answering. *See McCullough v. Branch Banking & Tr. Co.*, 136 N.C. App. 340, 350, 524 S.E.2d 569, 575–76 (2000).

### b.     Venue is proper

66.     Here, the issue of venue presents the question of whether the parties agreed to an enforceable forum selection of Tennessee.  While the proper venue for an action is generally determined by the law of the forum, parties may select a forum by agreement.  *See Lendingtree*, 228 N.C. App. at 408, 747 S.E.2d at 297 ("[A] contractual forum selection clause can modify th[e] default venue rule."); *see also Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3-CV, 2007 Tenn. App. LEXIS 781, at *14–15 (Tenn. Ct. App. Dec. 19, 2007) (affirming dismissal of lawsuit because a valid and enforceable forum selection clause determined the Tennessee was not a proper venue).

67.     Defendants' contractual argument arises from the LPA, which specifies that it will be governed by Tennessee law.  (*See* LPA § 19.5.)  As Tennessee has a clear "substantial relationship" to the controversy, this Court will honor the contractual choice of law.  *See Am. Air Filter Co. v. Price*, 2017 NCBC LEXIS 55, at *12 (N.C. Super. Ct. June 26, 2017) (stating that North Carolina courts will enforce choice of law clauses where the chosen state has a "substantial relationship to the parties or the transaction" and "application of the law of the chosen state [is not] contrary to the fundamental policy of a state which has a materially greater interest than the chosen state" (quoting *Cable Tel Servs., Inc. v. Overland Contr., Inc.*, 154 N.C. App. 639, 642–43, 574 S.E.2d 31, 33–34 (2002))).  "The choice of law provision[] . . . will be used to determine the *validity* and *construction* of the contract, regardless of any conflicts between the laws of the named state and the state in which the case

is litigated." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 92, 414 S.E.2d 30, 33 (1992); *see Map Supply, Inc. v. Integrated Inventory Sols., LLC*, No. COA07-733, 2008 N.C. App. LEXIS 1008, at *3–5 (N.C. Ct. App. May 20, 2008) (applying Michigan law to interpret a forum selection clause because the contract contained an enforceable Michigan choice of law clause); *Hickox*, 161 N.C. App. at 513–14, 588 S.E.2d at 568–69 (applying California law in determining that the forum selection clause was not applicable to the dispute at hand by its plain language); *Cable Tel Servs., Inc.*, 154 N.C. App. at 644–45, 574 S.E.2d at 34 (applying North Carolina law to determine the enforceability of a forum selection clause after determining that a Colorado choice of law clause did not apply).

68.     Tennessee law likewise controls if interpretation of the contractual provisions of the LPA trigger the internal affairs doctrine, which provides that, "with respect to limited partnerships, 'the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs[.]'" *Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 596, 821 S.E.2d 711, 723 (2018) (quoting N.C.G.S. § 59-901)); *see Mancinelli v. Momentum Res., Inc.*, 2012 NCBC LEXIS 30, at *5 n.9 (N.C. Super. Ct. May 17, 2012) ("It is worth noting that 'under the "internal affairs doctrine," some courts have declined to give effect to a contractual choice of law provision that seeks to trump the law of the incorporating state in matters involving the internal affairs of a foreign corporation.'" (quoting *Classic Coffee Concepts, Inc. v. Anderson,* 2006 NCBC LEXIS 24, at *34 (N.C. Super. Ct. Dec. 1, 2006))).

69.     Tennessee courts recognize that contract interpretation is a question of law, *Pitt v. Tyree Org., Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002), and a court's aim should be to determine and give effect to the parties' intent, *see Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996).  Each provision must be given its natural and ordinary meaning and should be construed in light of the entire agreement.  *Buettner v. Buettner*, 183 S.W.3d 354, 358–59 (Tenn. Ct. App. 2005).

70.     "If a contract is unambiguous, a court must interpret it as written and not in accordance with a party's unexpressed intent." *Williams v. Larry Stovesand Lincoln Mercury, Inc.*, No. M2014-00004-COA-R3-CV, 2014 Tenn. App. LEXIS 665, at *12 (Tenn. Ct. App. Oct. 15, 2014).  "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.  A strained construction may not be placed on the language used to find ambiguity where none exists." *Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994) (quoting *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975)).[5]

---

[5] North Carolina law on contract interpretation accords with that of Tennessee.  *See State v. Philip Morris USA Inc.*, 363 N.C. 623, 631–32, 685 S.E.2d 85, 90 (2009) (agreeing with *Buettner* (citing *Jones v. Casstevens,* 222 N.C. 411, 413–14, 23 S.E.2d 303, 305 (1942))); *Walton v. City of Raleigh,* 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (agreeing with *Williams*); *Lane v. Scarborough,* 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973) (agreeing with *Harrell*); *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (agreeing with *Cookeville Gynecology*); *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) (agreeing with *Pitt*).  North Carolina and Tennessee articulate the standard for determining whether a forum selection clause is enforceable differently, however.  *Compare Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 568, 566 S.E.2d 160, 162 (2002) (stating that, subject to public policy exceptions, North Carolina courts must enforce "mandatory" forum selection clauses and have discretion to enforce permissive ones), *with Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983) (stating that forum selection clauses are enforceable unless

71.     The Court finds no clear expression of the parties' intent to restrict venue in the LPA. *See Accredo Health Inc. v. Patterson*, No. W2006-02693-COA-R3-CV, 2007 Tenn. App. LEXIS 499, at *14 (Tenn. Ct. App. Aug. 1, 2007) (rejecting the contention that boilerplate choice of law provision operates as forum selection clause because if defendant "intended to include a forum selection clause, it easily could have done so"); *Cookeville*, 884 S.W.2d at 462 ("An ambiguity does not arise in a contract merely because parties may differ as to interpretations of certain of its provisions. . . . Neither the parties nor the courts can create an ambiguity where none exists in a contract." (internal citations omitted)).

72.     Significantly, the LPA itself provides a right to inspect books and records and in doing so does not reference or rely on the statutory right created by Section 61-2-304, (*see* LPA § 9.2), and Defendants concede that the parties "contemplated that actions could be brought by Plaintiff in a forum other than the 'court of record,'" (Defs.' Reply to Pl.'s Suppl. Br. 7), by stating that the LPA would be governed and interpreted in accordance with Tennessee law "excluding conflict of laws provisions," (LPA § 19.5).

73.     Nevertheless, Defendants argue that this Court should recognize an enforceable contractual forum selection clause because "[b]oth Tennessee and North Carolina support the view that mandatory forum selection clauses may be incorporated by reference to other agreements or *statutory provisions*," (Defs.' Reply

plaintiff cannot secure effective relief in chosen forum, other forum is substantially less convenient, or it would be unfair or unreasonable to enforce clause for some other reason).

to Pl.'s Suppl. Br. 2 (emphasis added)), but Defendants are unable to cite any precedent in support of the latter contention.

74.     Instead, Defendants cite a federal district court opinion applying Virginia law—*Middleburg Training Center, Inc. v. Firestone*, 477 F. Supp. 2d 719 (E.D. Va. 2007).  The *Middleburg* Court, relying on the "well-settled principle" that "a shareholder's contract rights and obligations *vis a vis* the corporation in which they own stock are found not only in the corporation's articles of incorporation, its corporate charter, or other documents, but also in the general corporation laws of the state of incorporation[,]" held that "the forum selection provision in Va. Code § 13.1-740 [wa]s incorporated into the contract between Virginia corporations and their shareholders, and hence constitute[d] a contractual forum selection clause." *Middleburg*, 477 F. Supp. 2d at 725–26.

75.     The Court is not persuaded.  While the internal affairs doctrine "recognizes that only one State should have the authority to regulate a corporation's internal affairs," *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982), it does not follow that the doctrine compels an exclusive forum as the purpose of the doctrine is to dictate the substantive law to be applied, *see Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 420 (E.D.N.C. 2012) ("Under North Carolina law, the substantive law of a corporation's state of incorporation governs suits involving '[the] corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders[.]'"

(quoting *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680–81, 657 S.E.2d 55, 63 (2008))).

76. The Court concludes that, based on the unambiguous language of the LPA, the parties did not expressly or impliedly agree to a forum selection clause and the law does not otherwise compel a mandatory forum. Accordingly, the Court determines that North Carolina's default venue principles apply. *See Se. Auto, Inc. v. Genuine Parts Co.*, 2017 NCBC LEXIS 34, at *19 (N.C. Super. Ct. Apr. 17, 2017) (stating that, absent an enforceable forum selection clause, venue is fixed by statute). Pursuant to those principles, venue is proper in Mecklenburg County, North Carolina. *See* N.C.G.S. § 1-79(a)(1) (stating that the residence of a domestic limited partnership is where the registered or principle office of the partnership is located); *id.* at § 1-82 (stating catch-all venue rule).

77. Accordingly, the Motion to Dismiss Claim I for improper venue should be denied.

**B.**     **The Motion for Judgment on the Pleadings (Claim III)**

78. Defendants move for judgment on the pleadings on Albright's Claim III, which seeks a declaration that "Defendants' attempt to extend the term of Vining-Sparks LP was void *ab initio* because Defendants failed to comply with the requirements [of the LPA], specifically including the requirement set forth in § 15.2

that any extension of the term of Vining-Sparks LP required the consent of all Limited Partners." (First Am. Compl. ¶ 31; *see* LPA § 15.2(b).)

79. In their answer, Defendants denied Albright's allegation that not all the limited partners consented to the amendment to the term of the partnership. (Answer First Am. Compl. ¶ 21.) Defendants contend that they subsequently mailed Albright "a list of all limited partners on the date the [LPA] was amended and copies of the consents signed by each of Vining-Sparks, LP's limited partners." (Mot. J. Pleadings 1.) Defendants then assert that there is no longer any "real controversy of justiciable nature." (Mot. J. Pleadings 2.)

80. Defendants attached a letter and a compilation of signature pages to the LPA signed by Vining-Sparks, LP's limited partners ("Consent Signatures") to their Motion for Judgment on the Pleadings. (Mot. J. Pleadings Ex. A ("Consent Signatures"), ECF No. 21.1.)[6] Later, at the Hearing, Defendants presented to the Court the Third Amended LPA and its Exhibit—the Vining-Sparks, LP Capital Accounts Table ("Capital Accounts Table"). The LPA specifies that the Capital Accounts Table contains the capital accounts, units, and percentage interest of each limited and general partner. (*See* LPA §§ 5.1, 5.2.)

81. Defendants suggest and Plaintiff denies that the Court can consider these documents without converting the motion to one for summary judgment. *See*

---

[6] The letter says its enclosures include "[a] list of all limited partners of Vining Sparks & Associates, L.P. as of the date the Third Amended and Restated [LPA] . . . was executed" and "[s]ignature pages from each limited partner's approval." (Consent Signatures 1.) However, that list of all limited partners was not included in Defendants' attachment to their Motion for Judgment on the Pleadings.

N.C.G.S. § 1A-1, Rule 12(c) ("[If] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]").  Defendants contend that the Court may consider the LPA, and by association, the Capital Accounts Table, as they are inside the pleadings because the First Amended Complaint explicitly references the LPA and makes "clear reference to the consent of the limited partners[.]"[7]  (Mot. J. Pleadings 2.)  Specifically, Defendants argue that Albright's pleadings are comparable to those in *Reese*, where the plaintiff "filed a complaint which referred to events that had been memorialized in a corporate resolution[,]" and though "the resolution [document] itself was neither specifically referenced in nor attached to the Complaint[,]" the Court of Appeals upheld the trial court's consideration of it.  (Defs.' Reply to Pl.'s Br. Opp'n to Defs.' Mot. J. Pleadings as to Claim III Pl.'s First Am. Compl. 3, ECF No. 29); *see Reese*, 196 N.C. App. at 546, 676 S.E.2d at 486 (noting that resolution document at issue "merely ratifie[d] and memorialize[d] in writing the actions of [the] Board . . . . [and] Plaintiff's

---

[7] Defendants also argued that, when Plaintiff filed his First Amended Complaint, he alleged upon information and belief that proper consent was not obtained but did not know conclusively, and the Consent Signatures provided by Defendants filled in "the gaps of Plaintiff's lack of knowledge."  (Defs.' Mem. Supp. Mot. J. Pleadings as to Claim III Pl.'s First Am. Compl. 4 ("Br. Supp. Mot. J. Pleadings"), ECF No. 22.)  While on a 12(c) motion "all well-pleaded factual allegations of the non-moving party are accepted as true," *DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C. App. 598, 600, 544 S.E.2d 797, 799 (N.C. Ct. App. 2001), Defendants argue that Plaintiff's statement in paragraph 21 of the First Amended Complaint: "[u]pon information and belief, the purported amendment to the term of Vining Sparks LP . . . was made without the required 'consent of all Partners[,]'" (First Am. Compl. ¶ 21), was not well-pleaded and should not be accepted as true, (Br. Supp. Mot. J. Pleadings 3).  According to Defendants, paragraph 21 is merely a statement of belief made before proof to the contrary was provided to Albright.  (Br. Supp. Mot. J. Pleadings 3–4.)  Effectively, Defendants rely on paragraph 21 as the means by which the Consent Signatures are to be considered inside the pleadings while simultaneously asking the Court to disregard that paragraph as poorly pleaded.

complaint expressly acknowledge[d] this action[,] and also that [the] Board . . . [was] moving forward to 'prepare appropriate documentation.'").

82.     Albright does not object to the Court's consideration of the LPA or the Capital Accounts Table, but also relying on *Reese*, objects to consideration of the Consent Signatures because he claims he has made no admission regarding them. *See Reese*, 196 N.C. App. at 545, 676 S.E.2d at 486 ("A 'document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding that document.'" (quoting *Weaver*, 187 N.C. App. at 205, 652 S.E.2d at 708)).

83.     In arguing for contrary outcomes based on *Reese*, the parties conflate two distinct lines of cases addressing what matters are considered inside the pleadings—the *Weaver* line and the *Oberlin* line.  Under *Weaver* and subsequently *Reese*, a court may consider a document: (1) that is attached to the moving party's pleading, (2) whose existence the non-moving party has admitted, and (3) whose accuracy the non-moving party has not contested.  *Id.* at 544–46, 676 S.E.2d at 485–86 (citing only *Weaver* for support); *see Weaver*, 187 N.C. App. at 205, 652 S.E.2d at 708; *see also Taidoc Tech. Corp v. OK Biotech Co., Ltd*, 2015 NCBC LEXIS 27, at *6–9 (N.C. Super. Ct. Mar. 16, 2015) (holding that it could not consider release agreement attached to defendant's answer on 12(c) because, for court to determine whether release agreement barred plaintiff's claims, it needed to reference other documents attached to answer which were neither attached to nor referenced by complaint).

84. The record does not reflect that those elements have been satisfied, particularly as the Consent Signatures in question were attached to no pleading in the first instance,[8] and because the Court does not read paragraph 21 of the First Amended Complaint, which simply states "[u]pon information and belief, the purported amendment to the term of Vining Sparks LP . . . was made without the required 'consent of all Partners[,]'" (First Am. Compl. ¶ 21), to be an admission as to the Consent Signatures, *see Horne*, 223 N.C. App. at 31, 732 S.E.2d at 618 (stating that an allegation asserting: "[u]pon information and belief, [defendant] has waived immunity for the suit by the purchase of liability insurance[,]" was not an admission "as to the existence of [the] defendant's liability insurance policy"). To the contrary, Albright has repeatedly and continuously refused to acknowledge the authenticity and completeness of the Consent Signatures.[9]

85. *Oberlin* is based on different criteria. Under *Oberlin*, contracts or other documents "to which the complaint specifically refers even though they are presented [to the court] by the defendant," "which [are] the subject matter of [the] action," and

---

[8] The Motion for Judgment on the Pleadings to which the Consent Signatures were attached is not itself a pleading. *See W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 189, at *2 (N.C. Super. Ct. Sept. 28, 2017) ("A motion is not a pleading." (citing N.C.G.S. § 1A-1, Rule 7(a)–(b))).

[9] For example, Albright points out that the signatures do not reference the correct iteration of the LPA, (*see* Pl.'s Br. Opp'n to Defs.' Mot. J. Pleadings as to Claim III Pl.'s First Am. Compl. 5–6 ("Br. Opp'n Mot. J. Pleadings"), ECF No. 27), the parties dispute whether the signature of general partner VSIBG EP was required, and there are inconsistencies between the partners listed in the Capital Accounts Table and the Consent Signatures. Plaintiff also refused to dismiss Claim III based on Defendants' production of the Consent Signatures because Defendants refused to sign an affidavit attesting to their authenticity and conclusiveness regarding the parties' dispute. (*See* Br. Opp'n Mot. J. Pleadings 5.)

which do not "create justifiable surprise [to] the non-moving party[,]" are inside the pleadings. *Oberlin*, 147 N.C. App at 60–61, 554 S.E.2d at 847. If documents satisfy those criteria, it is not essential that they be attached to a pleading. *See Robertson*, 88 N.C. App. at 441, 363 S.E.2d at 675 (affirming trial court's consideration of termite report attached to defendants' motion because it was the subject of plaintiffs' claims "and plaintiffs specifically referred to the document in their complaint").[10]

86.     The Court is unable to conclude that the Consent Signatures are "the subject of [Albright's] complaint" within the meaning of *Oberlin*. The Consent Signatures are not a document to which Albright's "complaint specifically refers." *Oberlin*, 147 N.C. App. at 60, 554 S.E.2d at 847. The First Amended Complaint, referring to no document in particular, merely states that the amendment to Vining-Sparks, LP's term was made "without the required 'consent of all partners.'" (First Am. Compl. ¶ 21.)

87.     The Court concludes that it cannot properly consider the Consent Signatures when ruling on the Rule 12(c) motion under either *Reese* or *Oberlin*, and even if consideration were proper, the parties continue to contest the accuracy and significance of the signatures, which is a dispute that cannot be properly resolved on a motion for judgment on the pleadings. *See Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 ("When the pleadings do not resolve all the factual issues, judgment on the

---

[10] Under these facts, the LPA, a contract about and upon which Plaintiff is suing, is a classic example of a document inside the pleadings under *Oberlin*. The LPA was not attached to the Complaint but is explicitly referenced and relied upon by Plaintiff though first presented to the Court by Defendants. (*See, e.g.*, First Am. Compl. ¶¶ 15, 31–33.) As such, the Court may consider the LPA and the Capital Accounts Table on the Motion for Judgment on the Pleadings, whose consideration Plaintiff does not even contest.

pleadings is generally inappropriate."). The Court, in its discretion, additionally declines to convert Defendants' Rule 12(c) motion into a motion for summary judgment such that it might be resolved at this time. Accordingly, the Rule 12(c) motion should be denied, without prejudice to the Court's ability to later consider the impact of the Consent Signatures on a motion for summary judgment.

## VI. CONCLUSION

88. For the reasons stated above, Defendants' Motions are DENIED.

SO ORDERED, this the 31st day of December, 2019.


/s/ James L. Gale
_____
James L. Gale
Senior Business Court Judge